FANNIE E. WILLSON, Appellant, *v.* FAXON, WILLIAMS & FAXON, Respondent.

Drugs and medicines — meaning of term "ordinary care" in reference to business of druggist — liability for injury to purchaser of medicine — when evidence of negligence sufficient to take case to jury — retail druggist representing itself to be manufacturer of proprietary medicine is not protected from liability by Public Health Law, § 235.

1. The negligence which must be established to render a druggist liable, in a case based upon the sale of a poison to a person who called for a harmless drug, is measured by his duty; and while this is only to exercise ordinary care, the phrase "ordinary care" in reference to the business of a druggist must be held to signify the highest practicable degree of thoughtfulness and vigilance, and the most exact and reliable safeguards consistent with the reasonable conduct of the business.

2. Plaintiff brought this action against a corporation engaged in the business of retail druggist to recover for personal injury alleged to have been occasioned through taking a proprietary medicine, sold her by defendant under its own label which contained a statement that the medicine was "purely vegetable," and was represented to her by defendant's clerk as being the same as another harmless preparation. *Held,* that negligence sufficient to take the case to the jury may be predicated upon evidence that the medicine contained a dangerous mineral poison and that the defendant although representing itself to be the manufacturer and, therefore, presumably acquainted with all the ingredients going to make up the medicinal preparation which it sold to the plaintiff, knew practically nothing about the nature of the compound, and had taken no effective means to ascertain the true character thereof.

3. The druggist representing itself as the manufacturer became liable to the purchaser to the same extent as the actual manufacturers would have been if the purchase had been made from them, and is not protected by the provisions of the Public Health Law (Cons. Laws, ch. 45, § 235, subd. 2), which, after declaring that every retail druggist shall be responsible for the quality and strength of the drugs which he sells, excepts "those sold in original packages of the manufacturer and those articles or preparations known as

patent or proprietary medicine." (*Thomas* v. *Winchester*, 6 N. Y. 397; *Torgesen* v. *Schultz*, 192 N. Y. 156, distinguished.)

*Willson* v. *Faxon, Williams & Faxon*, 147 App. Div. 920, reversed.

(Argued March 7, 1913; decided April 4, 1913.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 5, 1911, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, as far as material, are stated in the opinion.

*Charles Newton* for appellant.    Defendant was negligent in selling tablets containing calomel for cascara and representing them purely vegetable.    (*State Board* v. *Matthews*, 197 N. Y. 353; *Blood Balm Co.* v. *Cooper*, 83 Ga. 457; *Bruckel* v. *Milhau*, 116 App. Div. 832; *Torgeson* v. *Schultz*, 192 N. Y. 156; *Kuelling* v. *Lean Mfg. Co.*, 183 N. Y. 78.)    For this negligence defendant is liable to plaintiff.    (*Thomas* v. *Winchester*, 6 N. Y. 397; *Kuelling* v. *Lean Mfg. Co.*, 183 N. Y. 78; *Torgeson* v. *Schultz*, 192 N. Y. 156; *O'Neil* v. *James*, 137 Mich. 567; 1 Thompson on Neg. § 8; *Blood Balm Co.* v. *Cooper*, 83 Ga. 457; *Langridge* v. *Levy*, 2 M. & W. 519; *Allen* v. *S. S. Co.*, 132 N. Y. 91; *Garvey* v. *Namm*, 136 App. Div. 815.)

*Carlton E. Ladd* for respondent.    The proof wholly fails to establish negligence.    Taking the most favorable view of plaintiff's case and conceding for the sake of the argument that the impossible happened, plaintiff proved merely the happening of an accident, which is not enough to sustain an action in negligence.    (*Loop* v. *Littlefield*, 42 N. Y. 351; *Bruckle* v. *Milhau*, 116 App. Div. 832; *Gould* v. *S. W. Co.*, 147 Mass. 315; *Piehl* v. *Albany Railway*, 30 App. Div. 166; *Lafflin* v. *B. & S. Co.*, 106

N. Y. 136; *Carlson* v. *P. B. Co.*, 132 N. Y. 273; *Ship* v. *Fridenberg*, 117 N. Y. Supp. 599.) Defendant could not be charged with negligence for the reason that the Public Health Law exempted the defendant from responsibility. (Cons. Laws, ch. 45, § 197, subd. 2.)

WILLARD BARTLETT, J. This case has been tried twice. Upon the first trial the plaintiff was successful, but the judgment entered upon the verdict in her favor was reversed by the Appellate Division, and upon the second trial, the evidence being the same, a verdict was directed in favor of the defendant. From the judgment upon that verdict the plaintiff now appeals.

The defendant is a domestic corporation engaged in selling drugs and medicines in the city of Buffalo. The plaintiff purchased at its store a box of medicinal pills labeled as follows:

"Price 25 cents
"Kascara
"Kathartics
"Cure Constipation
"Faxon, Williams and Faxon, Mfg.
"Druggists, Buffalo, ⁷⁻  ⁷."

(On the reverse side):

"DIRECTIONS.

"KASCARA KATHARTICS can be taken at any time. As a laxative EAT one tablet. For constipation, a tablet at bed time, and one before breakfast will prove satisfactory. In obstinate cases continue this treatment until cured. Children, one-quarter to one-half tablet, according to age."

(On one side of the box):

"Stimulate the Liver,
"Invigorate the Bowels."

(On the reverse side):

"Purely vegetable,
"Pleasantly effective."

The plaintiff testified, and in this she was corroborated by her husband, that the defendant's clerk from whom she purchased the box of tablets informed her that the preparation was the same as cascara sagrada only in tablet form. She made use of the tablets, taking them as she had been accustomed to take cascara sagrada for the purpose of a laxative; but the consequences were very different from those produced by that medicine. The plaintiff developed a case of mercurial salivation, and an examination of the tablets proved that each tablet contained one-fifth of a grain of calomel combined with senna and podophyllin.

In behalf of the defendant it was proved that the tablets known as Kascara Kathartics were manufactured by Billings, Clapp & Company, wholesale druggists of Boston, Massachusetts, well known to the trade as reputable manufacturers of high grade patent and proprietary medicines; that the defendant purchased the tablets in question from these manufacturers, the goods being put up by them at the manufactory with the special label of the defendant printed thereon; and that Kascara Kathartics had been upon the market for about ten years. The quantities sold ranged from 500 to 1,000 pounds a year. From March, 1903, up to the time of the first trial in May, 1909, the defendant had sold about 900 boxes without complaint from any of its customers. It was stipulated that Kascara Kathartics was a patent or proprietary medicine and it appeared that it was not the custom of retail druggists to analyze proprietary medicines.

The Appellate Division held that the proof utterly failed to establish the negligence of the defendant because it did not know that the tablets sold to the plaintiff were dangerous and having purchased them of a long-established manufacturing concern of excellent reputation it was justified in placing reliance upon its vendor. The Appellate Division also seems to have been of the opinion that the defendant was protected by the following pro-

vision of the Public Health Law (Cons. Laws ch. 45, section 235, subd. 2: "Every proprietor of a wholesale or retail drug store, pharmacy, or other place where drugs, medicines or chemicals are sold, shall be held responsible for the quality and strength of all drugs, chemicals or medicines sold or dispensed by him *except those sold in original packages of the manufacturer, and those articles or preparations known as patent or proprietary medicines.*"

Where the contents of a medicine are concealed from the public generally and the manufacturer knows the contents and sells the medicine recommending its use for indicated maladies and prescribing the mode in which it shall be taken and an injury is thereby caused to a purchaser thereof, the manufacturer is liable to such purchaser for the injury which he has suffered. (*Blood Balm Co.* v. *Cooper,* 83 Ga. 457; *S. C.,* 5 L. R. A. 612.) In the case cited it was said that the purchaser "has a right to rely upon the statement or recommendation of the proprietor printed and published to the world; and if thus relying he takes a medicine and is injured on account of some concealed drug of which he is unaware the proprietor is not free from fault and is liable for the injury thereby sustained." The liability under these circumstances grows out of the misleading concealment of a material fact, as of the composition of a medicine which the manufacturer knows or ought to know and the accompanying representation to the purchaser that he may use the preparation with safety.

In the case at bar, however, we have to deal with a sale made not by the actual manufacturer but by a corporation of retail druggists which purchased the medicine in large lots from the actual manufacturer. It being agreed that the compound sold was a patent or proprietary medicine, the corporation seeks to shield itself behind the exception in subdivision 2 of section 235 (formerly section 197) of the Public Health Law, already

quoted, which, after declaring that every retail druggist shall be held responsible for the quality and strength of the drugs which he sells, excepts "those sold in original packages of the manufacturer and those articles or preparations known as patent or proprietary medicines."

Is the benefit of this exception available to a retail druggist who holds himself out to a purchaser as the actual manufacturer of the medicine sold? I think not.

It is plain that if the sale had been made by the manufacturers themselves, Billings, Clapp & Co., of Boston, the fact that Kascara Kathartics were comprehended within the class of patent or proprietary medicines would not in anywise have absolved Billings, Clapp & Co. from responsibility for the strength and quality which of course includes the character of the compound. I think that when the defendant represented to the plaintiff by means of the statement contained in the label on the box that Faxon, Williams & Faxon were the manufacturers of the preparation it rendered itself just as liable to the purchaser as the actual manufacturers would have been if the purchase had been made from them. In other words, the defendant, by reason of this representation, became responsible to the plaintiff for the strength and quality of the preparation notwithstanding its patented or proprietary character; and, if the compound contained an injurious substance instead of being purely vegetable as the label declared, the defendant became liable in law for the injury suffered by the purchaser in consequence of ignorantly taking the concealed poison.

The case is not at all like *Thomas* v. *Winchester* (6 N. Y. 397) or *Torgesen* v. *Schultz* (192 N. Y. 156), where the suits were by third parties against the original manufacturer. Here the action is by a purchaser against the immediate vendor; and it is with the duties and obligations of such vendor that we are concerned. The basis of the action is the sale of a poison to a person who called for a harmless drug; and the law is well settled that in

8

such a case evidence of negligence is necessary in order to make out a cause of action.    Mere proof of the mistake is not enough in and of itself to charge the vendor with liability.    (*Allan* v. *State Steamship Co.*, 132 N. Y. 91; *Brown* v. *Marshall*, 47 Mich. 576.)    The negligence which must be established to render a druggist liable in such a case as this is measured by his duty; and while this is only to exercise ordinary care, the phrase ordinary care in reference to the business of a druggist must be held to signify " the highest practicable degree of prudence, thoughtfulness and vigilance, and the most exact and reliable safeguards consistent with the reasonable conduct of the business in order that human life may not constantly be exposed to the danger flowing from the substitution of deadly poisons for harmless medicines." (*Tremblay* v. *Kimball*, 107 Maine, 53.)    Within this rule, however, I think there was sufficient evidence of negligence to take the case to the jury.    The defendant although representing itself to be the manufacturer, and, therefore, presumably acquainted with all the ingredients going to make up the medicinal preparation which it sold to the plaintiff, really knew nothing about the nature of the compound save what one of its agents had learned from Billings, Clapp & Co., to the effect that Kascara Kathartics were similar to Cascarets, and this witness admitted that he did not know what Cascarets contained.    I think negligence could be predicated of the action of the agent of the defendant corporation in selling this medicine upon the representation that it was the manufacturer, without having taken any other or further means to ascertain the true character of the compound.    If it could justify itself under the exception in the Public Health Law, already mentioned, it could escape liability even if the box of tablets had contained some deadly drug which had killed Mrs. Willson as soon as she took it.    A construction of the statute which could lead to such results is hardly worthy of serious consideration.

If I am right in the views which have been expressed the judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, CHASE and HOGAN, JJ., concur; COLLIN, J., dissents.

Judgment reversed, etc.