## CADILLAC MOTOR CAR CO. v. JOHNSON.

(Circuit Court of Appeals, Second Circuit. March 9, 1915.)

No. 187.

**1.** NEGLIGENCE ☞27—LIABILITY OF MANUFACTURERS OF ARTICLES CAUSING INJURY.

A manufacturer of automobiles, which purchased the wheels used on its automobiles, was not liable to an injured person, who purchased an automobile manufactured by it from a dealer, and who had no contractual relations with it, for its negligent failure to discover that one of the wheels was defective, since, while one who manufactures articles inherently dangerous is liable to third parties injured by such articles, unless he exercises reasonable care, one who manufactures articles dangerous only if defectively made is not liable to third parties for injuries, except in case of willful injury or fraud.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. ☞27.

Liabilities of manufacturers and vendors of injurious substances or defective machinery and appliances for injuries to persons other than immediate vendees, see note to Standard Oil Co. v. Murray, 57 C. C. A. 5.]

**2.** NEGLIGENCE ☞27—LIABILITY OF MANUFACTURER—FALSE REPRESENTATIONS—AVAILABILITY.

Even though an automobile manufacturer's prospectus represented that it manufactured the wheels of its automobiles, when in fact it purchased them from a manufacturer of wheels, such representation was not available to a purchaser from a dealer in automobiles, who had no contractual relation with the automobile manufacturer, in an action by him for injuries.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. ☞27.]

**3.** NEGLIGENCE ☞124—ACTIONS FOR INJURIES—EVIDENCE.

In an action against an automobile manufacturer, which purchased the wheels of its automobiles from the S. Co., for injuries sustained by a purchaser from a dealer, due to a defect in one of the wheels, it was error to exclude evidence as to the practice of manufacturers of automobiles and of the trade concerning the examination of wheels, even on the theory, on which the case was tried, that the manufacturer was liable if it knew or ought to have discovered that the wheel was weak and insufficient.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 235–238; Dec. Dig. ☞124.]

**4.** NEGLIGENCE ☞124—ACTIONS FOR INJURIES—EVIDENCE.

In such action defendant should have been allowed to show what inquiries it made as to the S. Co. before contracting with it for wheels, what answers it received, what reputation that company had as manufacturers, that their wheels were as high priced, if not higher priced, than any in the market, and that no prior accident had ever been heard of.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 235–238; Dec. Dig. ☞124.]

Coxe, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of New York.

For opinion below, see 197 Fed. 485.

William Van Dyke, of Detroit, Mich., for plaintiff in error.

Homer J. Borst, of Schenectady, N. Y. (A. J. Nellis, of Albany, N. Y., of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. In March, 1909, Johnson, the plaintiff below, bought of a dealer an automobile known as the Cadillac motor model 30, manufactured by the defendant. In July of the same year, while driving at from 12 to 15 miles an hour, the front right wheel broke, the car turned over, and Johnson sustained most serious injuries. He brought this suit to recover damages therefor, charging the defendant with simple negligence in respect to the wheel. There can be no question that the wheel was made of dead and "dozy" wood, quite insufficient for its purposes.

There was no contractual relation between the plaintiff and the defendant. The defendant bought the wheels it used of the Schwarz Company and in its prospectus stated:

"The Cadillac Company manufactures Cadillac cars almost in their entirety. It operates its own foundries, both iron and brass, its pattern shops, sheet metal shops, machine shops, gear cutting plant, painting, finishing, and upholstering departments. It makes its own motors, its own transmissions, its own radiators, hoods, and fenders. It makes even the small parts, cap screws, bolts, and nuts. There is not one of the millions of pieces manufactured annually which does not pass the scrutiny of trained inspectors—trained in accordance with the high ideals of the Cadillac organization."

   \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Wheels. The wheels are the best obtainable and equal to those used on the highest priced cars. They are of the artillery type, made from well-seasoned second growth hickory, with steel hubs. The spokes are of ample dimensions to insure great strength."

The plaintiff said of this prospectus that he had "looked it over" before he bought the car.

[1] The trial judge proceeded throughout the case on the theory that, though an automobile is not inherently a dangerous thing, it becomes so if fitted with a weak and insufficient wheel, and if the defendant knew, or ought to have discovered, that the front right wheel was such, then, especially in view of its prospectus, it was liable in damages to the plaintiff, although it had no contractual relations with him.

We do not understand this to be the law. So far as third parties are concerned, the liability of manufacturers is as follows:

One who manufactures articles inherently dangerous, e. g., poisons, dynamite, gunpowder, torpedoes, bottles of water under gas pressure, is liable in tort to third parties which they injure, unless he prove that he has exercised reasonable care with reference to the article manufactured. Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455; Torgesen v. Schultz, 192 N. Y. 156, 84 N. E. 956, 18 L. R. A. (N. S.) 726, 127 Am. St. Rep. 894; Willson v. Faxon, 208 N. Y. 108, 101 N. E. 799, 47 L. R. A. (N. S.) 693, Ann. Cas. 1914D, 49. In the Torgesen Case Willard Bartlett, J., said:

"It is manifest that there was no contract relation between the plaintiff and the defendant, but the defendant is sought to be held liable under the

doctrine of Thomas v. Winchester, 6 N. Y. 397, and similar cases, based upon the duty of the vendor of an article dangerous in its nature, or likely to become so in the course of the ordinary usage to be contemplated by the vendor, either to exercise due care to warn users of the danger, or to take reasonable care to prevent the article sold from proving dangerous when subjected only to customary usage. The principle of law invoked is that which was well stated by Lord Justice Cotton in Heaven v. Pender, L. R. 11 Q. B. D. 503, as follows: 'Any one who leaves a dangerous instrument, as a gun, in such a way as to cause danger, or who without due warning supplies to others for use an instrument or thing which to his knowledge, from its construction or otherwise, is in such a condition as to cause danger, not necessarily incident to the use of such an instrument or thing, is liable for injury caused to others by reason of his negligent act.' "

On the other hand, one who manufactures articles dangerous only if defectively made, or installed, e. g., tables, chairs, pictures or mirrors hung on the walls, carriages, automobiles, and so on, is not liable to third parties for injuries caused by them, except in case of willful injury or fraud. Loop v. Litchfield, 42 N. Y. 351, 1 Am. Rep. 513; Losee v. Clute, 51 N. Y. 494, 10 Am. Rep. 638; Kuelling v. Roderick Lean Co., 183 N. Y. 78, 75 N. E. 1098, 2 L. R. A. (N. S.) 303, 111 Am. St. Rep. 691, 5 Ann. Cas. 124. In the latter case Vann, J., said:

"A land roller is an implement not ordinarily dangerous, but one with a defective tongue, when the defect is thoroughly concealed for the purpose of making a better sale, may turn out to be as dangerous as a cartridge loaded with dynamite, instead of gunpowder. Liability in this case rests on the simple extension of the well-established principle that the maker of an article inherently dangerous, but apparently safe, who puts it on the market without notice, is liable to one injured while using it, to the maker of an article, not inherently dangerous, who made it dangerous by his own act, but so concealed the danger that it could not be discovered, and put it on the market to be sold and used as safe. The extension is logical and consistent with the authorities, for if the implement is not inherently dangerous, but the use thereof is made dangerous by a defect wrongfully concealed, the result is the same and the motive worse."

These distinctions are recognized in Savings Bank v. Ward, 100 U. S. 195, 204, 25 L. Ed. 621; Huset v. Case Threshing Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303; Pennsylvania Railway Co. v. Hummel, 167 Fed. 89. In the first of these cases Mr. Justice Clifford says:

"Pharmacists or apothecaries, who compound or sell medicines, if they carelessly label a poison as a harmless medicine, and send it so labeled into the market, are liable to all persons who, without fault on their part, are injured by using it as such medicine, in consequence of the false label; the rule being that the liability in such a case arises, not out of any contract or direct privity between the wrongdoer and the person injured, but out of the duty which the law imposes on him to avoid acts in their nature dangerous to the lives of others. He is liable, therefore, though the poisonous drug with the label may have passed through many intermediate sales before it reached the hands of the person injured. Thomas v. Winchester, 6 N. Y. 397, 410 [57 Am. Dec. 455]. Such an act of negligence being imminently dangerous to the lives of others, the wrongdoer is liable to the injured party, whether there be any contract between them or not. Where the wrongful act is not immediately dangerous to the lives of others, the negligent party, unless he be a public agent in the performance of some duty, is in general liable only to the party with whom he contracted, and on the ground that negligence is a breach of the contract. Collis v. Selden, Law Rep. 3 C. P. 496. Builders of a public

work are answerable only to their employers for any want of reasonable care and skill in executing their contract, and they are not liable to third persons for accidents or injuries which may happen to them from imperfections of the structure after the same is completed and has been accepted by the employers. Mayor, etc., of Albany v. Cunliff, 2 N. Y. 165, 174. Misfortune to third persons not parties to the contract would not be a natural and necessary consequence of the builder's negligence, and such negligence is not an act imminently dangerous to human life. Loop v. Litchfield, 42 N. Y. 351–358 [1 Am. Rep. 513]. So where the manufacturer of a steam boiler sold it to a paper company, it was held that the seller was only liable to the purchaser for defective materials, or for want of care and skill in its construction, and if after delivery to and acceptance by the purchaser, and while in use by him, an explosion occurs in consequence of such defective construction, to the injury of third persons, the latter will have no cause of action against the manufacturer. Losee v. Clute, 51 N. Y. 494–496 [10 Am. Rep. 638]."

We are not persuaded to the contrary by the decision in MacPherson v. Buick Motor Co., 160 App. Div. 55, 145 N. Y. Supp. 462.

[2] We do not regard the statements in the defendant's prospectus as a representation that it actually manufactured the wheels, but only that it bought the best wheels it could get. There was no evidence whatever that the plaintiff either read or relied on this representation before buying his car. However, in the absence of willful injury or fraud, of which there was no claim, this representation could not be availed of by third parties in no contractual relation with the defendant. Kuelling v. Roderick Lean Co., supra.

[3, 4] Even on the theory on which the case was tried, we think much evidence bearing upon the question of the exercise by the defendant of ordinary care was erroneously excluded, to its prejudice. The practice of the manufacturers of automobiles and of the trade as to the examination of wheels, while not controlling, was certainly relevant. In Shannahan v. Empire Co., 204 N. Y. 543, at page 550, 98 N. E. 9, at page 11 (44 L. R. A. [N. S.] 1185), Vann, J., said:

"Aside from the alleged violation of the Labor Law [Consol. Laws, c. 31], the plaintiff claimed that the defendant was guilty of negligence at common law. When such a question of negligence is involved, general usage and practice is competent to show ordinary care, just as one may show the purchase of a standard article from a reputable dealer. The common usage of the business is a test of negligence, but not a conclusive or controlling test. Bennett v. Long Island R. R. Co., 163 N. Y. 1, 4 [57 N. E. 79]; Burke v. Witherbee, 98 N. Y. 562, 566; Thompson's Negligence, § 3770; 29 Cyc. 609. While it is not always true that what everybody does anybody may do without the imputation of negligence, still it is competent to show the general habit of mankind in the same kind of business as tending to establish a standard by which ordinary care may be judged. We have said that 'ordinarily what everybody does is all that anybody need do.' Boyce v. Manhattan Ry. Co., 118 N. Y. 314, 319 [23 N. E. 304]. Such evidence is received for what it is worth, in view of all the circumstances of the particular case, and, under proper instruction from the court as to its inconclusive nature, the jury has a right to give it such consideration as they think it should receive in connection with all the other facts."

So the defendant should have been allowed to show what inquiries it had made as to the Schwartz Company before contracting with it for wheels, what answers it received, what reputation that company had as manufacturers, that their wheels were as high priced, if not higher

priced, than any in the market, and that no accident connected with the wood in the wheels had ever been heard of.

The judgment is reversed.

COXE, Circuit Judge (dissenting). I am unable to concur in the opinion of the court reversing the judgment herein. The plaintiff sustained serious and permanent injuries of the most aggravated character by reason of the collapsing of the front wheel of an automobile manufactured by defendant, and purchased by the plaintiff about four months prior to the accident. The principal defense is that the defendant purchased all its wheels from the Schwarz Company of Philadelphia, a reputable manufacturer, who agreed to use for the spokes the best obtainable second growth hickory. This he did not do. On the contrary, it is undisputed that the spokes of the wheel in question were made of dead, "dozy" and rotten timber, which went to pieces when the car was moving at the rate of 10 or 12 miles an hour.

The defendant had no representative in the Schwarz factory to inspect the wood put into the wheels purchased by it, and it never made any inspection itself of the wheels, which were painted with lead-colored paint before leaving the Schwarz factory. The only test applied by defendant was to drive the car for a few miles at different speeds, making frequent turns. If the wheels had been subjected to any test, even though slight and perfunctory, it would undoubtedly have discovered the decayed spokes.

If the law, as stated in the prevailing opinion, is sustained, the owner of an automobile entirely free from fault may be injured for life by the collapse of a decayed wheel occurring a few months after its purchase, and be absolutely without redress.

It is, I think, doubtful whether, in the circumstances disclosed, an action can be brought to a successful termination against the Pennsylvania company where the wheel was manufactured. If this be so it follows that an injury may be occasioned by the grossest negligence and no one be legally responsible. Such a situation would, it seems to me, be a reproach to our jurisprudence.

The principles of law invoked by the defendant had their origin many years ago, when such a delicately organized machine as the modern automobile was unknown. Rules applicable to stage coaches and farm implements become archaic when applied to a machine which is capable of running with safety at the rate of 50 miles an hour. I think the law as it exists to-day makes the manufacturer liable if he sells such a machine under a direct or implied warranty that he has made, or thoroughly inspected, every part of the machine, and it goes to pieces because of rotten material in one of its most vital parts, which the manufacturer never examined or tested in any way. If however, the law be insufficient to provide a remedy for such negligence it is time that the law should be changed. "New occasions teach new duties;" situations never dreamed of 20 years ago are now of almost daily occurrence.

The law should be construed to cover the conditions produced by a new and dangerous industry, and should provide redress for such in-

juries as the plaintiff has sustained. My own judgment is, considering the dangers to be encountered from passenger automobiles, that the manufacturer is under an implied obligation to build such cars of materials capable of doing the work required of them. He may purchase the parts of makers of high reputation, but this does not absolve him from the obligation of a personal inspection, which at least will discover obvious defects, such as decayed and "dozy" spokes. If it be impossible for the manufacturer to inspect the wheels at his own place of business he should have a representative skilled in the business at the wheel factory to make such inspection. In other words, where the lives and limbs of human beings are at stake it is not enough for the manufacturer to assert that he bought the wheel, which collapsed four months after it was sold, from a reputable maker and thought it was made of sound material. Such an excuse might be sufficient in the case of a farm wagon or a horse drawn vehicle of any kind, but in my opinion, it is wholly insufficient in the case of a wagon propelled by gasoline, which is capable of making 50 miles an hour. What would be regarded as sufficient care in the former case might be gross negligence in the latter.

The ultimate question is—can a manufacturer of motor cars escape liability for an injury occasioned by a grossly defective wheel by proving that he purchased the wheel from a reputable manufacturer? I think this question must be answered in the negative. The law imposes the duty of constructing a safe machine upon the manufacturer. He cannot avoid that duty by buying his materials from others. He is responsible for the car sold as having been manufactured by him. In the present case the defendant's representative sold the car to the plaintiff under an implied warranty that the wheels were made of reasonably sound material. Instead of being sound and staunch, one wheel was rotten and wholly incapable of withstanding the strain put upon it. This condition could have been discovered by subjecting the wheel to the simplest tests.

If the rule contended for by the defendant be the law, a manufacturer can sell a machine which menaces the lives and limbs of those who use it, and escape all liability by asserting that he bought the materials from dealers whom he supposed to be careful and prudent.

I think the judgment should be affirmed.