### THE RESOLUTE.

District Court, E. D. New York. March 11, 1927.

No. A–8028.

**I. Shipping ⬅➡50—Owners, retaining possession and operating vessel chartered to others, are prima facie liable for negligent operation.**

Where, under charter party, owners retain possession and operate vessel, they are prima facie liable for its negligent operation.

**2. Shipping ⬅➡50—Provision of charter party held not to impose on charterer liability for owner's negligence in operation of the ship.**

Provision of a charter party that owners shall not be liable for loss, damage, delay, or injury to charterer, its agents and employees, or to any passenger, from certain causes, *held* not to impose obligation on the charterer to indemnify them against liability for their negligence.

In Admiralty. Suit by Frederick J. Saunders against the steamship Resolute; the Atlantic Mail Corporation, claimant. On exceptions to petition of claimant, under admiralty rule 56, impleading the Raymond & Whitcomb Company. Exceptions sustained.

See, also, 14 F.(2d) 232.

Hunt, Hill & Betts, of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for Atlantic Mail Corporation.

Samuel A. Adamson, of New York City, for Raymond & Whitcomb Co.

CAMPBELL, District Judge. This suit comes before the court on the hearing of the exceptions filed by Raymond & Whitcomb Company to the petition filed by Atlantic Mail Corporation, claimant, against said Raymond & Whitcomb Company, under the Fifty-sixth rule in admiralty.

The libel alleges that libelant was one of several conductors in the employ of Raymond & Whitcomb Company, on board the steamship Resolute, in connection with a world tour, and that on the evening of the 3d of March, 1923, while the vessel was proceeding through the harbor at Hong Kong, China, he fell from the forward promenade deck, through an open and unguarded companionway, to the deck below, and received personal injuries; that at the time of the accident the promenade deck was totally dark, without lights, and with the customary guard gate of the said companionway negligently left off or open. The negligence complained of is that of the steamship and those who had her in charge, and libelant seeks to recover from said steamship the sum of $75,000 as damages for such injuries.

Atlantic Mail Corporation filed a claim to said vessel, an answer to said libel, and a petition to implead said Raymond & Whitcomb Company, under the fifty-sixth rule in admiralty. The petition, among other things, alleges that on the 13th day of June, 1922, Atlantic Mail Corporation, as owner of the vessel, and Raymond & Whitcomb Company, as charterer, entered into an agreement, a copy of which was attached to the petition, whereby the owners let to the charterers, and the charterers hired from the said owner, the steamship Resolute, for a cruise beginning at New York, on the 9th day of January, 1923, and ending at Cherbourg, France, on the 5th day of May, 1923, according to the schedule annexed to the original charter party; that the charterer was to furnish the specified number

of passengers, and that the voyage was to be prosecuted by the owners, and the operation of the vessel was to be under the control of the said owners.

Raymond & Whitcomb Company filed exceptions to the petition, on the grounds that neither the petition nor libel state any facts sufficient to constitute a cause of action against the Raymond & Whitcomb Company, nor any cause of action within the admiralty and maritime jurisdiction of this court.

[1] There is no allegation in the petition, either direct or inferential, that the vessel was operated by Raymond & Whitcomb Company, or that the libelant's injuries were occasioned by the negligence of said Raymond & Whitcomb Company, its agents, servants, or employees. There was no demise of said vessel to Raymond & Whitcomb Company, but the possession, operation, and control thereof remained in the owners, and, in the absence of a specific covenant to the contrary, primary responsibility rested on the owners. The Capitaine Faure (C. C. A.) 10 F.(2d) 950; The Aberfoyle, 1 Fed. Cas. 28, No. 16, aff'd 1 Fed. Cas. 35, No. 17.

[2] Article 5 of the charter party, upon which petitioner relies, reads as follows:

"The vessel, shipowner, master, or agent shall not be liable in any capacity for any loss, damage, delay, or injury to the charterer, its agents or employees, or to any passenger, or to baggage, personal effects, or other property, whether occurring before, during, or after embarkation, transit, transfer, discharge, or delivery, arising from any of the following causes, whensoever and howsoever occurring: The act of God, perils or accidents of the sea or other waters, or of navigation; causes beyond the shipowner's control; collision, stranding, jettison, or wreck; fire from any cause or wheresoever occurring on board, in craft, or on shore; fault or barratry of the master or crew, or other servants of the shipowner, enemies, pirates, robbers, theft by any person whether in the employ of the shipowner or not; arrest or restraint, capture, seizure, detention, interference of any sort, or any act of princes, rulers, governments, or people, or any power, legal process, or stoppage in transit; epidemics, pestilence, wars, rebellions, hostilities, riots, strikes, lockouts, stoppage of labor, or labor troubles of the shipowner, employees, or others; shortage or lack of fuel, conveyances, room, or facilities of any sort; explosion; bursting of boilers; steam breakage, accidents or derangements of machinery or appurtenances; unseaworthiness and/or latent or other defect in any part of the hull, boilers, engines, machinery, or appurtenances of the vessel, even though existing at the time of embarkation or at the beginning of the voyage, provided the shipowner shall have exercised due diligence to make the vessel seaworthy; water, heat, frost, ice, floods, freshets, smell, taint, leakage from baggage, or damage from stowage or contact therewith; temperature, refrigeration, fumigation, disinfection, moisture, sweat, rain or spray, stains, breakage, chafage, vermin, errors, insufficiency or absence of marks, numbers, address, or description; transshipment to or from and risk of craft and storage thereon; prolongation of. the voyage; giving way, falling, or destruction of wharf, shed, or warehouse."

Nowhere in said paragraph is it stated that the charterer shall be liable or save the owners harmless "for any loss, damage, delay, or injury to the charterer, its agents and employees, or to any passenger. * * * " What it does provide is that the vessel, shipowners, master, or agents shall not be liable.

To carry this intention into effect, it was not provided in the charter party that Raymond & Whitcomb Company should be liable for or save the owners from any loss, damage, delay, or injury to the charterer, its agents, employees, or to any passenger; but it was provided in article 8 of the charter party, with other provisions, as follows:

"The charterer will make no contract directly or indirectly affecting the vessel except passage contracts, and such passage contracts shall contain, on the face thereof, the exceptions enumerated in clause 5 hereof, and shall be signed by the passenger."

No breach of article 8 of the charter party, on the part of Raymond & Whitcomb Company, is alleged in the libel or petition.

The petitioner seeks a construction of the negative article 5, that will not only absolve itself, but shift all responsibility upon the charterers for the negligence of the vessel, its owners and agents. No such intention, in my opinion, can be drawn from the charter party, because by its terms Raymond & Whitcomb Company had no control over the operations of the vessel, or the master or crew, and the owners of the vessel could at will change the specific exemptions of liability as it saw fit.

No contract or covenant by Raymond & Whitcomb Company to indemnify the owners of the vessel against the negligence of the vessel, its owners and agents, can be implied, but any such contract or covenant must be expressed in clear language. In North American Ry. Const. Co. v. Cincinnati Traction Co. (C. C. A.) 172 F. 214, in which the contract

was for rehabilitation of tracks of a street railway, the court, at page 216, says:

"Contracts of indemnity such as the one here sued upon, are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other—over which the party indemnified has no control, and the party indemnifying has control. Indeed, it would take clear language to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified."

In Washington & Berkeley B. Co. v. Pennsylvania S. Co. (C. C. A.) 215 F. 32, in which the contract was for the construction of the steel portion of a bridge, at page 34, the court said:

"The presumption is exceedingly strong against an undertaking by any one, except an indemnity company, to be responsible for the negligent acts of another."

To interpret article 5 as the petitioner seeks to have it interpreted would place Raymond & Whitcomb Company entirely at the mercy of the vessel, its owners and agents, and make it answerable, not for its own negligence, but for the negligence of the vessel, its owners and agents, whom it could not control, and this would be unreasonable.

In Sanford v. Brown Brothers Co., 208 N. Y. 90, 101 N. E. 797, 50 L. R. A. (N. S.) 778, in which the contract was to furnish nursery stock, at page 96 (101 N. E. 799), the court said:

"It is a well-established canon of interpretation that, in seeking for the intent of parties, the fact that the construction contended for would make the contract unreasonable and place one of the parties at the mercy of the other may be properly taken into consideration."

Article 5 of the charter party is in no sense a covenant of warranty, as suggested by the petitioner, nor all the cases cited by petitioner, in support of its contention, in point. In neither the libel nor petition are facts alleged sufficient to constitute a cause of action against Raymond & Whitcomb Company.

The exceptions are sustained, and a decree may be entered, dismissing the petition, with costs to Raymond & Whitcomb Company against the petitioner.

Settle decree on notice.