# ALPHONSAS TIEDJE v. W. C. HANEY AND OTHERS.[1]

December 11, 1931.

No. 28,501.

[1]Reported in 239 N. W. 611.

*Murphy, Johanson & Nelson* and *Charles L. De Reu*, for appellant.
*Hall & Catlin*, for respondent.

LORING, J.

The plaintiff had a verdict against the Haney Drug Company in a suit to recover damages due to the taking of tablets which were purchased from the defendant and which are alleged to have contained poison which injuriously affected the plaintiff's health. Upon the trial the case was dismissed as to Marie Haney, and the jury found no verdict against W. C. Haney. D. C. Leo & Company were not served and did not appear in the action. The trial court granted the Haney Drug Company's motion for a new trial on the ground of error of law occurring in the trial. The particular error specified was the refusal to dismiss the action for fatal variance between the complaint and the proof. The plaintiff appealed from the order granting the drug company a new trial.

The complaint charged negligence generally against all the defendants in manufacturing and selling to the plaintiff tablets that were harmful and containing poison in quantities harmful to the human body. The evidence on the part of the plaintiff tended to show that he was afflicted with a bad cold and sent his brother to town to obtain some cold tablets similar to those which he had previously taken but the supply of which was exhausted. Plaintiff gave his brother the empty box which had contained the tablets he had previously taken and which were purchased by him from some drug store in Minneapolis. The brother went to the defendant drug company and presented the box and requested tablets for the

plaintiff like those which it had contained. These the defendant did not have, but represented that it had cold tablets of superior efficacy. The brother purchased a box and took it home to the plaintiff, who took the first tablet about 11 o'clock at night and was soon thereafter taken severely ill. At about half past one his mother gave him another one of the tablets, and within 15 minutes he became violently ill and vomited the undissolved portion of the tablet. From that time on he suffered from what the doctors called "toxic purpura," which affected his heart, caused the loss of one eye and impaired the vision of the other, and caused deep sores to appear all over his body, the skin to fall off his feet, and generally impaired his health, so that in the opinion of his doctor he is permanently incapacitated for hard farm labor. Prior to his illness he had been a strong man of a 170 pounds in weight. He lost about 40 pounds by his illness.

On the part of the defendant it was contended that the tablets it sold were a proprietary medicine compounded by D. C. Leo & Company, a wholesale drug manufacturer in the state of Iowa; that the name of the tablets was Superior Cold Tablets, containing but one grain of acetanilide, which would be harmless. The sale of the tablets to the plaintiff's brother was made by the defendant W. C. Haney, who was manager and had entire charge of the defendant drug company's business.

On the matter of variance between the pleading and proof, we are unable to agree with the trial court. It is true that D. C. Leo & Company were made defendants and were charged with participation in the manufacture and preparation of the harmful tablets. In one allegation it is charged that that company made and sold the tablets to the other defendants. The respondent contends that the joinder of D. C. Leo & Company, together with the allegation referred to, fixes the tablets which it is charged with having sold as being the Superior Cold Tablets. We find nowhere in the record any allegation or evidence to the effect that D. C. Leo & Company made no other tablets. In fact the evidence is to the contrary, since a representative of that company testified that they had made

numerous tablets and had sold many millions of them. Tablets other than the Superior Cold Tablets might well have been made by them and sold by respondent. So far as the record discloses anything in that regard, it indicates that D. C. Leo & Company were joined as defendants upon information received by plaintiff's attorneys from the defendants. The box introduced by defendants shows that D. C. Leo & Company's name was not upon the box of tablets which defendants assert was purchased for the plaintiff. Plaintiff's witnesses testified that the box and the tablets themselves differed in appearance from the Superior Cold Tablets. The remainder of the tablets in the box which were not taken by the plaintiff were, together with the box and instructions, destroyed by plaintiff's mother upon the advice of one of the doctors to prevent their doing further harm to any of the children around the house. The only information upon the box introduced by defendants or in the instructions which it contained was to the effect that the tablet contained one grain of acetanilide and the box was marked "Prepared for Haney the Druggist."

The plaintiff's pleading clearly indicated that it proposed to show that the tablets which were actually sold to him contained an excessive amount of poison, and the only point upon which the drug company can contend that it was taken by surprise was the claim that the tablets differed in appearance from the Superior Cold Tablets. Inasmuch as these Superior Cold Tablets weighed only about three and a half grains and were alleged to be harmless in the amount of poison that they contained, the defendants must have realized that under an allegation in the complaint that the offending tablets contained at least ten grains of poison they would have to meet a contention that the tablets sold differed in appearance and content from the Superior Cold Tablets. We do not see how the defendants could have been misled by the allegations of the pleadings. Apparently no attempt was made to apply G. S. 1923 (2 Mason, 1927) § 9281. We therefore hold that the learned trial court properly overruled the objections and motions on account of variance at the trial and was in error when it granted a new trial on that ground.

■ The respondent contends that there were other errors of law which justify the order for new trial and that such errors may be considered by this court in passing upon the order appealed from. This may be done.

■ The respondent urges that the court should have directed a verdict for the defendant at the close of the testimony and that the verdict is perverse because it is against the corporate defendant and in effect in favor of the individual defendant, W. C. Haney.

The respondent contends that the evidence was conclusive that the plaintiff's condition was due to an infection existing somewhere in his system and not to any poison which he had taken. A number of doctors were called and testified to that effect. Only one doctor testified for the plaintiff, and it was his opinion that the plaintiff's condition was due to his having taken an excess amount of one of the coal tar derivatives, either phenacetin or acetanilide. In his opinion, some, but not all, of the symptoms which he found in the plaintiff might have been caused by an infection in his system. In our opinion the doctor's testimony, together with all of the other circumstances testified to by the plaintiff's witnesses, was sufficient to take the case to the jury; and the trial court committed no error in refusing to direct a verdict for the respondent on this ground. "

■ The respondent also contends that it was entitled to a directed verdict because it asserts that the evidence conclusively shows that the tablets sold were a proprietary medicine for whose quality and composition it claims it was relieved of responsibility under G. S. 1923 (1 Mason, 1927) § 5813. That section provides that a druggist shall be responsible for the quality of all drugs, chemicals, and medicine sold by him, except proprietary medicines and other articles sold in the original packages of the manufacturer. Our interpretation of the statute does not agree with respondent's. In our opinion this section was not enacted to relieve druggists of any responsibilities, but was for additional protection to the public. It is significant that the rest of the section prohibits adulteration of drugs. At common law a druggist is bound to exercise toward his patrons that degree of care which is commensurate with the

hazards and dangers to which his patrons are exposed. Highland Pharmacy, Inc. v. White, 144 Va. 106, 131 S. E. 198, 44 A. L. R. 1478. It has been said that the ordinary care which a druggist is bound to exercise in filling his prescriptions and in the sale of drugs and medicines is the highest possible degree of prudence, thoughtfulness, and diligence, and the employment of the most exact and reliable safeguards consistent with the reasonable conduct of the business in order that human life may not be exposed to the danger following the substitution of deadly poison for harmless medicine. Tremblay v. Kimball, 107 Me. 53, 77 A. 405, 29 L.R.A. (N.S.) 900, Ann. Cas. 1912C, 1215. As to the quality of nonproprietary medicines, the statute has now imposed responsibility upon the vendor. In other respects and as to proprietary medicines, the law requires the same degree of care which was required prior to the enactment of § 5813.

In connection with the sale of proprietary medicines in the original package, the druggist is not required to analyze the medicine or drug when sold for the purpose for which compounded, and if the manufacturer is a reputable one, he may rely, under ordinary circumstances, on the rectitude of the manufacturer and the correctness of his compound. Ordinary care under such circumstances does not require a greater degree of diligence. West v. Emanuel, 198 Pa. 180, 47 A. 965, 53 L. R. A. 329.

But where the druggist obtains from a manufacturer tablets or medicine which he does not sell under the name of the manufacturer, but under his own name, accompanied by a statement that it was manufactured or prepared for him, in our opinion the druggist assumes a responsibility equivalent to that of the manufacturer of the drugs, and the rule in that regard laid down in Willson v. Faxon, 208 N. Y. 108, 101 N. E. 799, 47 L.R.A. (N.S.) 693, 697, Ann. Cas. 1914D, 49, applies. It is true that in that case the druggist sold a harmful preparation under a label which indicated that the druggist was the manufacturer thereof; but we think that he is equally responsible where he sells the medicine as prepared or manufactured for himself and does not disclose the name of the manufacturer.

In the case at bar the printed slip introduced by defendants as having accompanied the box stated:

"For many years we have put up and dispensed our reliable home medicines  *  *  *.  Our name on every box is your guarantee of their purity."

The word "proprietary" as applied to medicines necessarily implies that the medicine has been compounded by a manufacturer who prepared the medicine according to his own formula, State v. Kendig, 133 Iowa, 164, 110 N. W. 463, 465; though probably it is not necessary that the formula should be the exclusive property of the maker or that the process be secret.   It may have a character of its own according to the reputation of the manufacturer and the nicety with which it is prepared.   Ferguson v. Arthur, 117 U. S. 482, 6 S. Ct. 861, 29 L. ed. 979.   Obviously our § 5813 contemplated that proprietary medicines would be sold on the reputation and standing and under the name of their manufacturer.

We believe that a medicine cannot be considered proprietary unless the original package in which it is contained bears the name of the manufacturer.   If it does not, it comes within the rule applied to other medicines and drugs sold by a druggist and for the quality of which our statute holds him responsible.   As we read the record, there was no evidence to support a finding that the tablets were a proprietary medicine.

The word "quality" as used in § 5813 must include poisonous character, and if the jury found as they might under the evidence that the drug company sold a deleterious drug for plaintiff's use when a harmless one was called for, it was justified in finding for the plaintiff on the record before us.   Wright v. Avenson, 174 Minn. 97, 98, 218 N. W. 453; McAlpine v. F. & C. Co. 134 Minn. 192, 158 N. W. 967; Willson v. Faxon, 208 N. Y. 108, 101 N. E. 799, 47 L.R.A. (N.S.) 693, Ann. Cas. 1914D, 49.

■ We come now to the question of the perverse verdict; and in view of the undisputed testimony that W. C. Haney was the manager and had entire charge of the drug company's business and actually made the sale of the tablets to the plaintiff's brother, we conclude

that whatever negligence was shown on the part of the respondent must have been the negligence of W. C. Haney. Consequently a verdict which in effect acquits him of negligence, but finds the respondent guilty thereof is perverse and requires a new trial. Begin v. Liederbach Bus Co. Inc. 167 Minn. 84, 208 N. W. 546. W. C. Haney is not before us. What effect a verdict in his favor if followed by a judgment would have, upon another trial, is also a question not before us. The order as to the respondent must stand.

Order affirmed.

