ADELOR BERRY v. S. S. DANIELS AND ANOTHER.[1]

November 8, 1935.

No. 30,529.

[1]Reported in 263 N. W. 115.

*Cobb, Hoke, Benson, Krause & Faegre* and *Grady & Grady,* for appellant.

*Oscar R. Knutson,* for respondent.

LORING, JUSTICE.

This is an action by a special administrator for damages arising out of the death of an infant child. The child, Alan Babe Claire Berry, was born January 11, 1934, and died May 26, 1934, from ileocolitis (inflammation of the bowels). Plaintiff, his father, alleges that the bowel condition that led to the child's death was the result of administering to the child doses of mineral oil, contaminated with formalin, commonly called "formaldehyde," which he purchased from the defendant Simpson, a clerk at the drugstore owned by the defendant Daniels.

At the close of the case plaintiff moved to dismiss on the merits against the clerk, Simpson, and the court granted the motion and later entered judgment in Simpson's favor. The case was then submitted to the jury, which found against the defendant Daniels. From an order denying Daniels' motion for judgment notwithstanding the verdict or for a new trial this appeal is taken.

The appellant's assignments of error may be divided into two major contentions: First, that the verdict against Daniels is not justified by the evidence, and, second, that the judgment in Simpson's favor is a bar to judgment against Daniels.

1. In passing upon the questions presented we are obliged to draw the conclusions and make the justifiable inferences most favorable to the plaintiff in support of the verdict. Such evidence tended to show that about the middle of April, prior to the death of the child, Adelor Berry, its father, purchased from Daniels' drugstore a pint bottle of mineral oil. This was largely for his own use although his physician had advised mineral oil for the baby when its

condition indicated need for it. May 16, the contents of the bottle being exhausted, Berry took the empty bottle back to the drugstore and asked for 25 cents worth of mineral oil. The clerk, defendant Harold Simpson, took the empty bottle to the prescription room, partly filled it, and returned it to plaintiff, who paid the 25 cents charge. Some of the mineral oil therein contained was given to the child, which almost immediately became ill and ten days later died.

In Daniels' store the mineral oil was dispensed to the retail trade in the following manner: The oil was received from the manufacturers in 30-gallon steel drums. It was drawn from those drums into gallon jugs, and pint and quart bottles were filled therefrom. The bottles were then sealed and placed on the store shelves for sale. For those customers who wanted quantities of oil less than that contained in sealed bottles, a gallon dispensing jug was kept in the prescription room, from which these orders were filled. It was from this jug that the bottle of plaintiff was partly filled. The record does not show who had drawn this particular jugful of oil from the 30-gallon drum, but the jury might well infer from the evidence that whoever had done so had negligently permitted formalin or formaldehyde to become mixed with the oil.

Berry testified that when the baby became ill he smelled of the oil bottle and that it smelled of formaldehyde. He said that he then took the bottle to Daniels and complained about it. He also said that Daniels admitted that the bottle smelled of formaldehyde, and they then both smelled of the dispensing jug, which smelled of formaldehyde. Daniels earnestly denied that the jug smelled of formaldehyde, but in support of the verdict we are bound to take Berry's testimony as true since it is not incredible. From this testimony, if it believed it, the jury was justified in the inference that someone connected with the drugstore had carelessly permitted formaldehyde to get into the dispensing jug.

Consequently there is support for the finding that the oil contained in the jug was contaminated with formaldehyde, that a small quantity of it was sold to plaintiff and administered to his child, and that the child died as a result thereof. After conference

with counsel the case was submitted to the jury on the theory that if it found that formaldehyde had been mixed with the oil that of itself was enough to establish responsibility for the consequences. Defendant Daniels frankly admitted that if such were the case it was negligence. There was some controversy over the date of the sale of the oil, but that was a fact question and was determined in favor of plaintiff on competent evidence.

2-3. Daniels contends that the judgment in favor of Simpson is a conclusive bar to a judgment against him, reasoning that the liability of the master is derivative and depends solely upon the negligence of the servant and that an acquittal of negligence on the part of Simpson absolves Daniels from liability. With this contention we cannot agree. Whatever might be the result if Daniels' liability depended solely on the acts of Simpson, there is here abundant evidence of responsibility aside from the sole act of sale. The real cause of death lay in the carelessness which resulted in formaldehyde being mixed with the oil. The record is silent as to how this occurred and certainly does not fix the blame on Simpson. On the contrary, it discloses lack of knowledge as to who may have filled the dispensing jug from the drum. On the question of the bar of the judgment, the burden is distinctly on him who asserts the bar. Further, 1 Mason Minn. St. 1927, § 5813, reads in part as follows:

"Every proprietor or manager of a place where drugs are sold shall be responsible for the quality of all drugs, chemicals, and medicines sold by him."

In interpreting that section we said in Tiedje v. Haney, 184 Minn. 569, 573, 239 N. W. 611, 613:

"In our opinion this section was not enacted to relieve druggists of any responsibilities, but was for additional protection to the public. * * * As to the quality of nonproprietary medicines, the statute has now imposed responsibility upon the vendor."

Daniels' liability, therefore, is not predicated solely upon the negligent act of Simpson but is imposed upon him by his responsibility for the quality of his drugs. The jury was justified by plaintiff's

testimony in finding that the quality of the oil had become dangerously impaired prior to the sale by Simpson. Had the same adulterated oil been sold in some way by an automatic vending machine instead of by Simpson, Daniels' responsibility under the statute would be quite clear. For that reason this case differs from those cases where it is sought to hold the master solely on the ground of acts of his servant, for which a judgment exonerates the servant.

Affirmed.

[1]Reported in 263 N. W. 109.