OPINION OF THE COURT
Vincent E. Doyle, J.
Motion by defendant General Motors Corporation (GMC) for an order pursuant to CPLR 3212 directing entry of judgment dismissing the complaint and all cross claims against GMC.
The undisputed facts in this case from transcripts of depositions of the parties and affidavits submitted are as follows: GMC manufactured and sold an incomplete vehicle consisting of a "cutaway” chassis. It included a cab used by the driver, but had no body to the rear of the cab. The cab had no rear *910 enclosure except for a temporary piece of protective cardboard. The "GMC” logo appeared on the grille. Defendant the Horton Company (Horton) purchased the chassis, removed the cardboard panel, installed a patient module of its own design and manufacture on the chassis to the rear of the driver’s cab. The module included a bulkhead to separate it from the cab. In the patient module directly to the rear of the driver’s seat in the cab, Horton installed a swivel "attendant seat” mounted on a sliding base both of which had been selected by Horton from the product line of manufacturers who are not parties to the action. GMC had no part in the design or manufacture of the patient module or of any of its parts. Horton sold the vehicle as an ambulance and it ultimately was bought by defendant Town of Holland which supplied it to the Holland Fire District No. 1 for use by the volunteer fire company of said fire district, of which plaintiff John C. Nelson, Jr. was an employee and volunteer fireman.
Plaintiffs bring a product liability action, claiming that plaintiff John C. Nelson, Jr. was injured while seated in the "attendant seat” when the ambulance collided with a flatbed tractor trailer, which caused the seat to swivel, throwing plaintiff forward into the bulkhead. Plaintiffs’ action predicates liability of GMC upon allegations of defective design construction and testing of the seat bulkhead and its doorway. Only after discovery revealed defendant Horton designed, manufactured and incorporated each of those parts into the ambulance after the chassis had left possession and control of GMC, do the plaintiffs argue GMC should be held responsible for the allegedly defective parts for the sole reason that its logo remained on the grille.
In support of this motion, defendant GMC contends: (1) since GMC neither designed, manufactured, sold, nor handled the allegedly defective parts, it could not have eliminated the danger, and thus has no liability, and (2) the mere labeling of GMC’s own product (leaving its logo upon the grille) is not thereby an indorsement, a certification or an adoption of later changes in the chassis made by defendant Horton. Plaintiffs argue, in opposition to this motion: (1) that the chassis bore GMC’s logo for marketing purposes of GMC, (2) by reason of that fact, GMC indorsed and certified the finished vehicle, as an ambulance, to the defendant Town of Holland, the Holland Fire District and the plaintiff, and (3) that as a result thereof GMC involved itself in the marketing of this ambulance, thereby placing itself in the position where public policy *911 imposed a duty upon it to use ordinary care in its indorsement and certification so that the consuming public who rely on its indorsement are not unreasonably exposed to the risk of harm.
It is settled law in New York in product liability cases that the manufacturer of a product may not be cast in damages, where after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiffs injuries (see, Robinson v Reed-Prentice Div. of Package Mach. Co., 49 NY2d 471). Although a manufacturer is under a duty to design and manufacture a product which is safe at the time - of sale, it is not responsible for injuries caused by subsequent modifications by another however foreseeable such modifications may have been to the manufacturer (see, Robinson v Reed-Prentice Div. of Package Mach. Co., supra; Hansen v Honda Motor Co., 104 AD2d 850). The New York courts have repeatedly held that essentially, plaintiffs in product liability cases must show that the product was defective when it left the defendant manufacturer’s possession and control (see, Caprora v Chrysler Corp., 52 NY2d 114; Rainbow v Elia Bldg. Co., 79 AD2d 287, affd 56 NY2d 550).
In the instant case, it is undisputed that defendant GMC neither designed, manufactured nor sold or handled any parts alleged to have been defective. Those parts were either manufactured by defendant Horton or purchased by it from third parties and added by it to the vehicle long after the chassis had left the control and possession of GMC. Thus, GMC could not have eliminated any of the dangers alleged by plaintiffs. There being no allegation here that the chassis was unsafe, and having no control over what defendant Horton added to it, defendant GMC cannot be held liable for any alterations made to the chassis by defendant Horton.
Plaintiffs argue here, that GMC should be cast in damages not because it had any connection with the allegedly defective parts which caused plaintiffs injuries, but solely because its logo appeared on the grille. Plaintiffs argue, further, that GMC "endorsed and in effect certified” the parts subsequently added by defendant Horton in the same way that Good Housekeeping magazine or Underwriters Laboratories purportedly do when they issue their seals of approval; or that GMC represented itself as the manufacturer of the parts later added by defendant Horton in the same way a retailer does when it *912 causes its private brand name to be affixed to a product. This court finds neither theory meritorious.
First, the GMC logo attached to the grille of the chassis is not the same or even analogous to the seals of approval issued by Good Housekeeping or Underwriters Laboratories. In Hempstead v General Fire Extinguisher Corp. (269 F Supp 109, 111), relied upon by plaintiffs, the Underwriters Laboratories’ label included the words, "Tested 500 lbs * * * Underwriters [sic] Laboratories, Inc., inspected”. Similarly, in Hanberry v Hearst Corp. (276 Cal App 2d 680, 682, 81 Cal Rptr 519, 521), also relied upon by plaintiffs, the Good Housekeeping seal was accompanied by its pledge: "This is Good Housekeeping’s Consumers’ 'Guaranty’ and 'We satisfy ourselves that products advertised in Good Housekeeping are good ones and that the advertising claims made for them in our magazine are truthful.’ ” Here, defendant GMC did not represent itself to the consuming public as a product rating organization, nor did it claim to have special expertise in evaluating ambulances or their component parts. The GMC logo makes no such representation nor does it suggest that GMC examined, tested, or evaluated any part added by defendant Horton after the chassis left the possession and control of GMC. The imposition of liability upon the purported indorser of a product depends in part upon the nature of the "endorser’s” business, the degree of its closeness to the injured party, the moral culpability of its conduct, and the policy of preventing future harm (see, Benco Plastics v Westinghouse Elec. Corp., 387 F Supp 772). Here, defendant GMC was obviously not in the business of rating or recommending the products of others. In the circumstances of the instant case, it cannot be cast in damages for having "endorsed” or "certified” the addition of allegedly defective parts to the chassis by defendant Horton well after the chassis had passed from its possession and control.
Finally, in the circumstances of this case, the position of GMC is neither the same nor analogous to a retailer who represents another’s product as one of its own manufacture. The court in Willson v Faxon, Williams & Faxon (208 NY 108), also relied upon by plaintiffs, held the seller of a defective product liable to the purchaser primarily on the ground that the seller had attached its own name to the product as the manufacturer. Here, GMC did not sell a defective product, nor did its logo on the grille of the chassis in and of itself represent to the consuming public, including the defendant *913 Town of Holland, that any subsequent additions made to the chassis by defendant Horton were also manufactured by it. Thus, no liability attaches to GMC for injuries to the plaintiff, here, sustained as a result of allegedly defective parts incorporated upon the chassis by defendant Horton.
For all of the reasons stated above, the motion for summary judgment by the defendant GMC is granted.