# E. C. VOGT, INC. v. GANLEY BROTHERS COMPANY AND OTHERS.[1]

No. 28,540.

March 11, 1932.

[1]Reported in 242 N. W. 338.

*John H. Horcish,* for appellant.
*Barrows, Stewart, Jackson & Junkin,* for respondents.

STONE, J.:

There was a verdict for $3,976.17 against defendant Ganley Brothers Company, whereupon it moved in the alternative for judgment notwithstanding or a new trial. The motion for judgment was granted, and plaintiff appeals. There was a dismissal below as to its codefendants, so Ganley Brothers Company is the only remaining defendant and sole respondent here.

Plaintiff is a Wisconsin corporation, organized for pecuniary profit. It did not comply with our statute, G. S. 1923 (2 Mason, 1927) § 7493, and become authorized to do business in this state until June 8, 1927. The peremptory order for judgment against it went upon the ground that the record made it appear conclusively that plaintiff had been transacting business in this state before June 8, 1927, and so could not sue upon the claim now involved, which arose out of such business.

The involved transaction appears from the complaint to have been initiated March 18, 1927, almost three months before plaintiff was domesticated in this state. That aside, it appears conclusively that plaintiff had been engaged in several real estate deals, had purchased several valuable St. Paul properties and for a time managed them, collecting and disbursing the rents, all before June 8, 1927. We go into detail only enough to indicate the nature of the business done. June 17, 1926, plaintiff purchased, under executory contract, a down-town office building in St. Paul. The stated purchase price was $400,000. The down payment, $10,000, was paid by checks of plaintiff. The contract was signed for plaintiff by E. C. Vogt, as president, and authenticated by plaintiff's corporate seal. Also, before it was licensed in this state it became the owner of at least two St. Paul apartment house properties. It had a resi-

dent agent for their management and collection of rents. Documents in evidence show conclusively that plaintiff took the usual equitable title of a vendee of real estate, and through its local agent was in the direct control and active management of the properties.

Our law concerning the licensing of foreign corporations is found in G. S. 1923 (2 Mason, 1927) §§ 7493–7495. By § 7493, their rights to transact business, to "acquire, hold or dispose of property within this state, or to sue or maintain any action at law or otherwise in any courts in this state" are all conditioned upon compliance with the statute. Obedience yielded after unlawful business is transacted or a prohibited contract made does not remove the statutory bar. G. Heileman Brg. Co. v. Peimeisl, 85 Minn. 121, 88 N. W. 441. No claim is made that plaintiff is entitled to the rule applicable to isolated transactions. W. H. Lutes Co. v. Wysong, 100 Minn. 112, 110 N. W. 367.

■ There is testimony by Mr. Vogt, president of plaintiff, that the Minnesota business done in the company's name before June 8, 1927, was his business and not that of the corporation. We need not consider the legal question whether, if that were true, it would make any difference. That a corporation does business simply as the alter ego of an individual does not much mitigate the fact that it is doing business. But we put that aside. Contracts, checks, and correspondence all speak for plaintiff, the corporation, and not at all for Vogt, the individual. All show legal acts of plaintiff, the artificial person, rather than of Vogt, the natural person, who now calls them his own. The papers in evidence are physical facts demonstrating the unsoundness of that claim. The history we get from the operative papers in such a case must control as against any artificial aspect which later is attempted to be put upon them by the mere declarations of an interested party. Facts, proved to the point of demonstration, control as against mere declarations of witnesses. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10344; 28 R. C. L. 661.

■ Defendant Ganley Brothers Company all through the trial seems to have taken the position that up to June 8, 1927, plaintiff

had been doing business in this state unlawfully. Upon that ground it moved for a directed verdict, its counsel taking the position that the question was purely one "of law for the court and not at all a question for the jury." The motion was denied. Then defendant requested an appropriate instruction, which was granted, on the question whether plaintiff had been unlawfully transacting business in the state. Plaintiff now argues that because defendant requested that instruction it is so far bound by it as to be estopped to claim that the question was not for the jury.

That view is all wrong. Certainly counsel are not to be prejudiced because, after propounding a given point and protecting the record thereon, they yield gracefully to an adverse ruling and proceed in obedience thereto. Here, over objection from counsel for defendant, the question was submitted to the jury. They were entirely within their rights in requesting an appropriate instruction upon the question which was being submitted. Having interposed timely objection, they are not now estopped from claiming that its submission was error. Of course counsel cannot question an instruction which they themselves propound as expressing their own theory of a case. Lee v. Wilson, 167 Minn. 248, 208 N. W. 803. But, having first urged of record that an issue should be disposed of as one of law, they are not deprived of the benefit of the point if, the court having ruled against them, they request an appropriate instruction.

Order affirmed.

On Application for Reargument.

On April 21, 1932, the following opinion was filed:

Stone, J.

Plaintiff's petition for reargument is denied. But there must be a correction as to facts of an error for which the author of the opinion is responsible. The contract for the "down-town office building in St. Paul" was the contract, as the opinion states, of the corporation. But the down payment was not paid finally by the corporation, but by Mr. Vogt personally. There are in evidence two checks of the corporation, at least they are signed "E. C. Vogt,

Inc." one for $5,000 and the other for $12,000, which appear to have been tendered to apply on this contract. They were not paid because the drawer did not have in the drawee bank the funds to meet them. But all that is immaterial and does not touch the fact, apparent on the face of the contract, that the undertaking thereby evidenced was that of the corporation rather than of Mr. Vogt personally. That transaction, with others in evidence, makes inescapable the conclusion that the company was doing business in Minnesota without statutory authority.