ELIZABETH CAREY ODEGARD v. JAMES CONNOLLY
AND ANOTHER.
MARY AND G. S. McCULLOCH v. SAME.[1]

December 5, 1941.

Nos. 33,031-36, 33,062-64.

[1]Reported in 1 N. W. (2d) 137.

*Bergmann Richards,* for appellant James Connolly.

*Freeman & King,* for appellant Margaret Cleland Gallagher.

*Fletcher, Dorsey, Barker, Colman & Barber, Charles F. Noonan,* and *Jule M. Hannaford, III,* for respondents.

HOLT, JUSTICE.

Each defendant appeals from the order denying a new trial. Defendant Gallagher also appeals from the judgment in each of the three cases.

At about 3:45 p. m. June 7, 1940, a collision between a Buick coupé, driven by defendant Cleland (Gallagher) easterly on the

four-lane through highway No. 7 (Excelsior boulevard) and a Chevrolet sedan, driven by defendant Connolly, took place as the latter, driving north on Twelfth avenue in Hopkins, entered No. 7, turning westerly. Plaintiffs Carey and Mary McCulloch, guest passengers in the Buick, were thrown out and seriously injured. There is no need to further detail the situation. Neither appellant contends that the evidence does not sustain a recovery, for neither moved for a dismissal or a directed verdict. Such a collision in broad daylight, the road conditions good, and no distracting circumstances, can only be ascribed to the negligence of either one or both of the drivers. Since the collision, plaintiff Carey and defendant Cleland have married, and at the trial the former was Mrs. Odegard and the latter Mrs. Gallagher.

The assignments of error of defendants are the same with respect to misconduct of plaintiffs' attorney in calling the witness Heinrich; also as to the excessiveness of the verdicts; and in permitting the jury to consider whether the abortion to which plaintiff Carey submitted was necessitated by the injuries she received in the collision.

We do not consider it necessary on this appeal to determine when a new trial should be granted because of the admission of evidence regarding a defendant's insurance, for this record is clear that neither defendant is in position to claim error. One Leon Warner, called by plaintiffs, stood 150 feet west of Twelfth avenue and 100 feet south of No. 7 and saw the collision. He picked up plaintiff Carey and gave her first aid. In calling this witness, there certainly can be no misconduct imputed to plaintiffs' counsel. Warner testified to a conversation there with defendant Connolly. To the question "Did he say anything?" his answer was "Yes, he said something about giving the ladies all the aid and help we could get; to get hold of anybody they could, good doctors, because he had insurance, and they would be taken care of." Neither of the two experienced attorneys of defendant made any objection whatever to the answer quoted. After taking about 130 pages of testimony, the witness Heinrich was called by plaintiffs.

Heinrich testified he came upon the scene at the same time the police car arrived and was viewing one of the smashed cars. He testified:

"It was very much smashed up, and there was a man standing next to me, and I made the remark, 'I am glad I wasn't in that car.' The man spoke up and said, 'I was.' That was all he said, with the exception, I thought he was rather unconcerned, and he said, 'I have nothing to worry about. I have a hundred thousand dollars insurance.' That was the extent of the conversation."

After some further examination, the attorney for defendant Connolly moved to strike the witness's testimony "with an undisclosed person for want of foundation." Then followed a long examination, and finally Heinrich identified defendant Connolly in the courtroom as the one with whom he had the conversation testified to. Surely, there was no error in refusing to strike for want of foundation. Then again, when it came to the defense, the defendant Connolly in answer to his counsel's questions denied that he had the conversation with Heinrich. Then the attorney asked this question of his client: "Did you talk with her [Cleland] about the subject of insurance? A. Yes, I did. * * * She told me she had insurance on her car, and I told her I had insurance on my car." Can Connolly complain that the jury were informed of insurance? Clearly not. Nor should defendant Cleland, for her counsel made no objection to the codefendant's testimony, nor at the trial to that of Heinrich.

We think too much is made of the fact that parties to an automobile collision carry insurance. It is safe to assert that the majority of every jury, called to try such a case in the Twin Cities, comes from families owning cars carrying liability insurance. Every person fit to be a juror knows that none but the wholly irresponsible and reckless fail to carry liability insurance on the car they own or drive. Owners of cars, for the protection of their families and guest passengers, carry such insurance. So long as the insurance is not featured or made the basis at the trial

for an appeal to increase or decrease the damages, the information would seem to be without prejudice.

The conversation and conduct of the drivers concerned in a two-car collision, just after it takes place, may indicate to the jury who was at fault. Such statements and attitude may be considered as *res gestae,* from which admission of negligence may be drawn. Courts in other jurisdictions have so held in respect to a driver's statement of insurance coverage. King v. Wilson, 116 Cal. App. 191, 2 P. (2d) 833; Bauer v. Reavell, 219 Iowa, 1212, 260 N. W. 39; Wulze v. Aquardo (Mo. App.) 6 S. W. (2d) 1017; Tanner v. Smith, 97 Mont. 229, 33 P. (2d) 547; McCurdy v. Flibotte, 83 N. H. 143, 139 A. 367.

Another assignment common to both defendants is that the verdicts are excessive and given under the influence of passion or prejudice. The trial court negatived the presence of passion and prejudice. We have seldom, if ever, gone through a trial record which contains so little wrangling between attorneys, such courteous conduct by the three attorneys engaged to facilitate the introduction of evidence—without objection, exhibits such as map, photographs, X-ray films were admitted. It was indeed a model trial, without the ordinary friction and sparring. It is to be assumed that the final arguments to the jury were as free from any appeal to improper matters as the evidence appears to be.

In view of the serious injuries, the size of the three verdicts does not indicate that the jury were influenced by passion or prejudice. The plaintiff Odegard received a verdict of $12,366.06; the plaintiff Mary McCulloch $30,000; and her husband, plaintiff McCulloch, $5,000 consequential damages. Plaintiff Odegard was 25 years of age, and her marriage was set for the evening of June 7. Plaintiff Mary McCulloch was 40 years of age. Each suffered a fractured pelvis and had to endure the pains connected with such injuries. These fractures healed, but both women were left with permanent defects in the pelvic region. Both were in hospitals about two months. For hospitalization and doctors' fees, Mrs. Odegard incurred $2,366.06 and Mrs. McCulloch almost

$2,000. In addition, both women received injuries to the hip joint; but this was more severe in the case of Mrs. McCulloch. The latter also suffered a fractured skull, which appears to have permanently impaired her health, and other injuries have subjected her to pains and physical discomforts and inconveniences that have to be endured daily through life. There is no need to go into more detail. The amount of damages was for the jury. The trial court has approved these verdicts as not excessive. There is nothing in this record which justifies this court in disturbing any one of them. Nor is anything gained by citing or discussing the many cases cited by both respondents and appellants of large verdicts heretofore passed on by this court. It is enough to say that no case exactly like the one at bar has been cited, and further we know that the value of the dollar is not what it formerly was.

One other assignment of error is directed by both defendants against plaintiff Odegard's verdict. She was married August 29, 1940. In March 1941 her physician deemed it necessary on account of the condition of her health to relieve her of the child she was bearing. Both her attending physician and Dr. Strauchauer testified that they were of the opinion that the collision of the previous June 7 caused the necessity of the abortion. We are of the opinion that defendant Gallagher was not entitled to the instruction that no damages could be allowed plaintiff Odegard for the abortion expenses incidental thereto. The same point was raised by defendant Connolly by motion to strike the testimony of one doctor who had testified to the same effect, *viz.,* that the injuries received by plaintiff Odegard resulted in a condition which necessitated the abortion.

What has been said in the preceding paragraph also goes to the opinion expressed by the doctors that it was likely that the injuries suffered in the hip joint would lead to arthritis therein. The court correctly instructed the jury that no damages for future or permanent impairment or suffering could be allowed unless the evidence showed their occurrence to be reasonably certain.

Defendant Connolly assigns many errors on the charge. No. 7 was zoned by the highway commissioner as to speed. At the intersection of Twelfth avenue the allowable speed was 40 miles per hour. There was testimony that she was going 50 miles as she approached Twelfth avenue. There was also evidence that it was less than 40 miles per hour. There were "stop" signs for Twelfth avenue. There was testimony that defendant Connolly did not stop, and also that he did stop. He did not signal, with arm extended or otherwise, his intention to turn to his left on No. 7. In view of this evidence, it became the duty of the jury, rather than the court, to apply the statutory law as they found the facts to be.

The answer to the assignment of error that the court did not give Mason St. 1940 Supp. § 2720-178(b), is that no proof was offered that the collision occurred within the village of Hopkins. The statute reads:

"(b) Where no special hazard exists the following speeds shall be lawful but any speeds in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; *except that any speed limit within any municipality shall be an absolute speed limit and any speed in excess thereof shall be unlawful.*" (Italics supplied.)

And § 2720-178(b)(1) reads: "30 miles per hour in any municipality." It cannot be presumed that the highway commissioner would post No. 7, at the place of collision, at the permissible speed of 40 miles per hour, if within the village, unless at the request of the village authorities. (§ 2720-178[e].)

We see no reversible error in this instruction:

"If you find that he [Connolly] failed to approach the intersection on the right half of Twelfth avenue, and failed to make his left turn to the right of the center line of said highway [No. 7], but entered upon said highway No. 7 by cutting diagonally across the left half of said Twelfth avenue, then you may

consider such conduct on his part as *prima facie* evidence of negligence."

There was testimony that Connolly angled over to the left side of Twelfth avenue before turning onto the trunk highway.

The order and judgments are affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.