STELLA E. COFRAN v. CLAIRE SWANMAN.
ELIZABETH BRENNAN v. SAME.[1]

November 7, 1947.

Nos. 34,469, 34,470.

---

[1]Reported in 29 N. W. (2d) 448.

*Freeman & King* and *Plunkett & Plunkett,* for appellants.

*Thomas J. Spence, Karl G. Neumeier,* and *John Harrigan,* for respondent.

MATSON, JUSTICE.

In each of two separate personal injury actions brought against defendant and consolidated for trial, we have an appeal from a judgment entered pursuant to an order granting defendant's motion for judgment *non obstante.*

On January 20, 1945, at about 12:00 midnight, defendant was driving north on highway No. 212 on her way from St. Paul to Stillwater. She was accompanied by the plaintiff Elizabeth Brennan, who sat beside her in the front seat, and by the plaintiff Stella Cofran, who occupied the rear seat. Defendant's car, a 1942 Chevrolet five-passenger coupé, was in excellent condition. Defendant and plaintiffs, all registered nurses, were on their way home from professional work in St. Paul.

About one mile north of Lake Elmo, defendant's car collided with a Buick car driven in the opposite direction by Nicholas Hengescht, who is not a party to these actions. Defendant and plaintiffs were severely injured. In each of the actions brought by plaintiffs against defendant, a motion for a directed verdict in favor of defendant was denied. The jury brought in a verdict of $8,500 for plaintiff Brennan, and one of $20,000 for plaintiff Cofran. Thereafter, in each case the trial court granted defendant's motion for judgment *non obstante* on the ground that the overwhelming preponderance of the evidence indicated that the accident happened solely because of the negligence of Hengescht, the driver of the Buick.

■ A motion for judgment *non obstante* accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn from such evidence, as well as the credibility of the testimony for the adverse party, and if the application of this rule, in the light of the evidence as a whole, discloses a reasonable basis for the verdict, the motion must be denied. Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Mardorf v. Duluth-Superior Transit Co. 194 Minn. 537, 261 N. W. 177; 3 Dunnell, Dig. & Supp. § 5082.

We turn to the evidence most favorable to plaintiffs. Miss Brennan testified that up to the instant before the collision she was awake, sitting in a relaxed position with her eyes closed, and that she was suddenly aroused by the excited exclamation of defendant: "What is the matter with that car? I will fix them." As Miss Brennan opened her eyes, she saw the lights of the Buick "very close to us" coming from the opposite direction. She says that defendant instantly flashed on her bright car lights and that simultaneously the Chevrolet veered to the left "right over into the hood" of the Buick, which, according to her testimony, was traveling on the west side of the pavement in its own lane of travel. Mrs. Cofran, who was sitting sidewise in the back seat engrossed in ripping the hem of a dress, was aroused just before the crash by defendant's exclaiming, "What is this," or, as Miss Brennan testified, "something to that effect," but she could not hear the exact words. As she looked up she saw the lights of an approaching car. She testified

that the Chevrolet then "swerved from our lane over onto the other side" and crashed into the other car, which was proceeding on its side of the pavement.

Upon cross-examination, defendant testified that some time subsequent to the accident, in talking with the plaintiffs about the matter of instituting suits against her for damages, she told them (plaintiffs) to go to her insurance company for help, "I asked them—I told them to go to my company for their help."

Obviously, the foregoing evidence, of and by itself, without taking into consideration the other evidence in the case, would constitute a legal cause of action and provide a reasonable basis for the verdicts. However, what constitutes a reasonable basis for a verdict upon a motion for judgment *non obstante* must be determined *in the light of the evidence as a whole,* and not by isolating and considering only the portion of the evidence favorable to the verdict. Evidence contrary to the verdict is not to be discarded. Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Spensley v. Oliver I. Min. Co. 216 Minn. 451, 13 N. W. (2d) 425. The power to set aside a verdict should be exercised sparingly. If, however, upon a search of the entire record, after taking the evidence in the light most favorable to the verdict and giving the adverse party the benefit of every inference reasonably deducible therefrom, the evidence as a whole manifestly and so overwhelmingly preponderates to the contrary as to be practically conclusive against the verdict, the motion for judgment *non obstante* should be granted. Although the right to set aside a verdict is to be exercised with extreme caution, there is a positive duty to do so when the evidence so overwhelmingly preponderates against the verdict as to leave no reasonable basis for its support.

In determining whether the evidence sustains the verdict, it is not for the court to weigh the evidence other than to determine its sufficiency in law. Where, however, the established physical facts demonstrate that an accident could not have occurred as claimed, it is the duty of the court to say so. Bauer v. Miller Motor Co. 197 Minn. 352, 267 N. W. 206. If the undisputed or conclusively

shown physical facts negate the truthfulness or reliability of the testimony upon which a verdict is based, the verdict is without foundation and must be set aside. Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134. "Facts, proved to the point of demonstration, control as against mere declarations of witnesses." E. C. Vogt, Inc. v. Ganley Bros. Co. 185 Minn. 442, 444, 242 N. W. 338, 339.

"If an inference of negligence from part of the facts is inconsistent with and repelled by other facts conclusively shown, negligence is not proved. Akerson v. G. N. Ry. Co. 158 Minn. 369, 197 N. W. 842.

"A finding of negligence cannot rest on testimony which is clearly inconsistent with admitted or conclusively shown physical facts." (Citing cases.) Bauer v. Miller Motor Co. 197 Minn. 352, 357, 267 N. W. 206, 209.[2]

In the instant case, as part of the evidence contrary to the verdicts, there are conclusively demonstrated physical facts which negate plaintiffs' testimony. These physical facts have added force, in that they are corroborated by the positive testimony of the occupants of another automobile which followed defendant's car for about five miles at a distance of only 150 or 200 feet. After the collision, the Buick driven by Hengescht came to rest on the west side of the highway with its left front wheel on the pavement and its two rear wheels on the shoulder just off the pavement. It was facing south and was almost parallel with the highway. Defendant's Chevrolet came to rest on the east side of the pavement with its rear wheels in the ditch and its front wheels upon the shoulder. It was facing west and was practically at right angles to the pavement. Glenn Coutts, who was a passenger in the car following about 150 or 200 feet behind the Chevrolet and who was an on-the-spot eyewitness of the collision, found all debris on the east side of the center line. Deputy sheriff W. M. Greeder, who arrived on the scene

[2]Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Opperud v. Byram, 173 Minn. 378, 217 N. W. 379; Giermann v. St. P. M. & M. Ry. Co. 42 Minn. 5, 43 N. W. 483; Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372; Spensley v. Oliver I. Min. Co. 216 Minn. 451, 13 N. W. (2d) 425; 6 Dunnell, Dig. & Supp. §§ 9764, 10344; 5 *Id.* § 7160a.

about 12:15 a. m., found all debris 4 feet to the east of the center line. James W. O'Brien and George E. Mechelke, who arrived shortly after the collision, found the debris, inclusive of broken glass, to the east of the center line, with the exception of a hubcap which Mechelke saw on the west side of the road. These foregoing physical facts would not necessarily be controlling were it not for the additional physical evidence of distinct skid marks. State highway patrolman Russell Carlstrom, who arrived about 12:20 a. m., observed and measured a "very distinct" skid mark (which appeared to have been made by an automobile wheel scraping across the pavement sidewise) leading directly from the right rear wheel of the Buick and extending at an angle in a northeasterly direction over the pavement for a distance of 56 feet, with its northeastern terminus a little over 3 feet east of the center line. Continuing from this skid mark and extending from the northeastern terminus thereof was a faint wheel track running in a northerly direction for about 45 or 50 feet at a distance of about 3½ feet east of the center line. This wheel track was matched by a parallel wheel track about 7 feet east of the center line. Deputy sheriff Greeder saw the same skid marks and wheel tracks. O'Brien and Mechelke both testified to the skid mark leading from the Buick which angled across the pavement to a point about 3½ feet east of the center line. The positively identified skid mark which appeared so distinctly on the pavement, together with the fainter wheel tracks leading to the north on the east side of the center line, constituted mute but eloquent evidence as to the point of impact and as to the course taken by the Buick immediately before and after the collision. Arnold Nippoldt, another deputy sheriff, who arrived between 12:00 and 12:30 a. m., observed that a deep rut or track 5 or 6 inches deep in the snow on the east shoulder, substantially parallel to the east edge of the pavement, led directly back to the right front wheel of the Chevrolet, indicating how this car had been pushed back by the impact of the collision.

In direct corroboration of these controlling physical facts, we have the positive testimony of William J. Coutts, who drove his car

immediately behind that of defendant, the testimony of Helen Coutts, his wife, who occupied the front seat with him, and that of Glenn Coutts, who sat on the back seat. The Coutts car entered the highway about 5 miles south of Lake Elmo and followed defendant's car at a distance of 150 or 200 feet to the rear up to the very time of the accident. Each of the Couttses testified that defendant at all times drove at a reasonable speed and always stayed in her lane of travel up to and including the time of the accident. They saw another car going south about 200 feet ahead of the Buick and observed that, as this car passed, the distance between its lane of travel and that of defendant's car was approximately 4 feet. William Coutts saw defendant's car, which had never left its proper lane of travel, shortly before the moment of collision, "turn sharply to the right." All three testified without qualification that the Buick immediately before the accident was traveling on the east side of the center line in defendant's lane of travel. These impartial and disinterested witnesses not only corroborated the controlling physical facts above described, but furnished direct testimony that defendant, when suddenly confronted with the onrushing Buick, attempted to avoid the collision by turning "sharply to the right."

It is true that defendant could not recall what took place immediately before and at the time of the collision, but this lapse of memory was explained by her physician, who testified that the brain injury she suffered had brought about a period of retrograde amnesia. Her lapse of memory is of no significance. Under the circumstances here existing, it is also of no particular significance that defendant, a considerable time after the accident, told plaintiffs to go to her insurance company for help. It was in effect scarcely more than a statement that her interests in the matter were being taken care of and controlled by the company with which she carried insurance for her protection against liability.[3]

---

[3]Two decisions cited by counsel in oral argument are clearly not in point. Odegard v. Connolly, 211 Minn. 342, 344, 1 N. W. (2d) 137, 139, involved an admission as part of the *res gestae,* in that defendant immediately after

In the light of the evidence as a whole, it is manifest that the evidence, with its undisputed physical facts, so overwhelmingly and conclusively preponderates against the verdicts as to negate the testimony of plaintiffs and to leave the verdicts without a reasonable basis for their support. The demonstrated physical facts, fortified by the positive testimony of disinterested witnesses, must here prevail over the declarations of plaintiffs, who were vitally interested in securing a favorable outcome. It is not amiss to point out that both plaintiffs admitted that defendant was a careful and prudent driver at all times up to the very moment before the accident. On the way to the hospital from the scene of the collision, Miss Brennan told a Mrs. Jones, who accompanied her, that she did not know how the accident occurred. State highway patrolman Carlstrom testified that he visited both of the plaintiffs in the hospital the next day and that each said she did not know how the collision happened.

The trial court properly granted the motions for judgment *non obstante.*

Judgments affirmed.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the evidence as to defendant's negligence made the issue with reference thereto a question of fact for the jury, particularly in view of this court's rulings in Odegard v. Connolly, 211 Minn. 342, 1 N. W. (2d) 137, and Litman v. Peper, 214 Minn. 127, 7 N. W. (2d) 334.

---

the accident said to "get hold of anybody they could, good doctors, because he had insurance, and they [the persons injured] would be taken care of." Litman v. Peper, 214 Minn. 127, 129, 7 N. W. (2d) 334, 335, involved positive and unequivocal admissions by defendant that the box of his truck "must have been over the center of the road" and that the driver of the vehicle with which he collided "was traveling at a reasonable rate of speed and on the right side of the road." Neither of the above decisions involved undisputed and conclusively established physical facts to negate testimony to the contrary.