PHYLLIS KATLABA, A MINOR, BY HENRY KATLABA,
HER FATHER AND NATURAL GUARDIAN, v.
MARTHA PFEIFER AND OTHERS.
EDWIN L. KRULISH, APPELLANT-RESPONDENT.[1]

January 16, 1953.

Nos. 35,778, 35,779.

---

[1]Reported in 56 N. W. (2d) 725.

*Mahoney, Cragg & Barnett,* for appellant-respondent Krulish.

*Warren F. Plunkett* and *Plunkett & Plunkett,* for respondents-appellants Pfeifer.

*F. J. O'Brien* and *Arthur Olsen,* for respondent Katlaba.

MATSON, JUSTICE.

We have two separate appeals by defendants in a personal injury action arising out of a collision and brought by a guest passenger.

Defendant driver of the car in which plaintiff was riding, appeals from an order denying him a new trial. The other two defendants, owner and driver of the other automobile, appeal from an order denying their motion for judgment notwithstanding the verdict or a new trial.

At about 1:15 a. m. on January 14, 1951, the automobiles collided approximately three miles south of Bixby, Minnesota, on a straight and level section of U. S. highway No. 218. The highway runs north and south and is surfaced with concrete for a width of 20 feet. The concrete slab, which is divided into two travel lanes by a black center line, is flanked on each side by a level shoulder eight feet wide. At the time of the accident a heavy fog limited visibility and the highway surface was damp.

The car in which plaintiff and three others were passengers was being driven in a southerly direction by the defendant Edwin L. Krulish. They were returning home from a dance in Bixby where they had consumed some drinks containing whiskey. Plaintiff sat in the front seat between the driver and Lloyd Yarwood. The back seat was occupied by the defendant driver's brother, Frank, and his girl friend. According to Krulish and three of his passengers, the car traveled about 25 miles per hour. Krulish said that he watched the center line at all times and, until the moment of impact, he was never east of the center line. Yarwood watched the west shoulder through the front side window and said that prior to the moment of impact the car always was wholly in the west lane. Defendant's brother in the back seat observed just before the collision that the car was close to the west shoulder.

Simultaneously defendant Edward Pfeifer, Jr., with the permission of his sister, defendant Martha Pfeifer, was driving the latter's Chevrolet car north on the same highway. He and his two front seat passengers testified that they were driving at a speed of 25 miles per hour. Edward said that the Krulish car was traveling about 50 miles per hour when he first observed it about 100 to 150 feet away. All occupants of the Chevrolet said the Krulish car was veering into their lane from the time they first saw it. Edward said

that in attempting to avoid the collision he turned the Chevrolet onto the shoulder but did not apply his brakes.

We come to the physical facts. The position of the cars immediately after the collision discloses that the left front half of one car collided with the left front half of the other. Krulish's car came to rest in the Pfeifer lane facing in a southeasterly direction. The right rear wheel was approximately on the center line; the left rear wheel was about three feet east of the center line; the right front wheel was about five feet into the east lane; and the left front wheel was about eight or nine feet east of the center line. In contrast the Pfeifer car was in its own lane, facing in a northwesterly direction. The right rear wheel was two feet east of the pavement on the shoulder; the right front wheel was on the pavement about three feet from the east edge; the left rear wheel was on the pavement about a foot or two from the east edge of the pavement; and the left front wheel was on the pavement about three feet east of the center line. Debris, consisting of mud dislodged from under the car fenders and broken glass, was primarily deposited in the east lane where the cars came to a rest, although some of it was scattered on other parts of the pavement. The sheriff who came on the scene shortly after the collision saw a faint skid mark in the west lane. He also observed a gouge mark in the pavement which started on the west side of the center line and continued across such line in a southeasterly direction into the east lane where it led to the Krulish car. There is no evidence as to how far the gouge mark extended west of the center line.

The jury awarded plaintiff a verdict against all defendants. Issues arise upon defendant Krulish's motion as to (1) where the evidence, in the light of the physical facts, sustains a verdict, and (2) as to the admissibility of certain testimony. Upon the alternative motion of the other two defendants, substantially similar issues arise.

■ Defendant Krulish asserts that the gouge mark in the pavement is a physical fact which conclusively demonstrated that his automobile was wholly within the west lane at the moment of im-

pact and controls against the testimony of witnesses to the contrary. Two photographs of Krulish's car were received in evidence which show that the front car bumper was broken loose on the left side so that the bumper guard—located at a point about midway between the front wheel and the center of the front of the car—rested on the pavement. Krulish contends that the impact of the collision broke the bumper, that the bumper guard hit the pavement at the moment of the collision, and that it made the gouge mark as his car passed from a position wholly within the west lane to the place where it finally came to rest in the east lane. Does such physical evidence conclusively demonstrate the falsity of the testimony of witnesses that Krulish had entered the east lane prior to the collision? We think not. Assuming that the gouge mark was made by the bumper guard,[2] such physical fact is not decisive because we have no evidence to show how far the gouge mark extended into the west lane. The sheriff's testimony does not disclose whether the gouge started one inch or two feet west of the center line. Taking into consideration the position of the guard upon the bumper with relation to the car's width, it follows that the gouge mark may have commenced at a point west of the center line although a part of the car was within the east lane. If we are to conclude that the gouge mark commenced so far west of the center line as to demonstrate that the Krulish car was wholly within its proper lane of travel, we must resort to conjecture. Physical facts, in all their essential parts, if not admitted, must be conclusively proved to the point of demonstration before they negate the declarations of witnesses so as to leave a verdict based on their testimony without foundation.[3] Taking the view of the conflicting evidence most favorable to the verdict, there is ample testimony to support the verdict against Krulish.

---

[2]The testimony is not so definite that it can be said with certainty that the gouge mark was made by the bumper guard or that it resulted from this particular accident.

[3]Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448; Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134; E. C. Vogt, Inc. v. Ganley Brothers Co. 185 Minn. 442, 242 N. W. 338; 6 Dunnell, Dig. & Supp. § 10344a.

■ It is further contended that prejudicial error occurred when Tim Braten, a Bixby garage and wrecking service operator, was permitted to testify that, when he was traveling north on highway No. 218, at about 1:15 or 1:20 a. m., he met a dark Ford car traveling south on the wrong side of the highway at a speed of about 50 miles per hour. This was the first southbound car which he met although he met two more cars before he reached Bixby. Braten further said that upon entering Bixby he saw cars leaving the dance hall which ordinarily closed at 1 a. m. He said that later, when he arrived with the wrecker at the scene of the collision herein, he found that the Krulish car—which was of a medium blue color—resembled the car which he had earlier passed a mile south of Bixby. He would not, however, say it was the same car. Any valid objection to the receipt of Braten's testimony must relate to its weight. Whether his testimony was relevant and admissible in that it was of sufficient probative value to be helpful in aiding the jury to arrive at a correct verdict (as distinguished from being inadmissible in that it provided the jury with little more than a basis for a conjecture) rested in the sound discretion of the trial court. The discretionary function of the trial judge in determining whether evidence offered has enough probative value to outweigh the risks of its reception is not to be restricted by technical exclusionary rules which defeat a consideration and weighing by the jury of all relevant facts. Courts should be slow to set up technical rules to exclude as evidence what would be accepted as relevant in the ordinary affairs of life.[4] Although Braten's testimony was not entitled to great weight, we cannot say that the trial court abused its discretion in permitting the jury to evaluate its persuasive worth in connection with the rest of the evidence. We also are not unmindful of the fact that no prejudice could reasonably have resulted, because, aside from Braten's testimony, there was ample evidence upon the issue of Krulish's negligence to sustain the verdict. It is

[4]Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97; cf. Jacobs v. Village of Buhl, 199 Minn. 572, 273 N. W. 245; see, 7 Dunnell, Dig. (3 ed.) § 3251; 1 Wigmore, Evidence (3 ed.) §§ 11, 12, 28, and 29.

not an appellate court's province to set aside a verdict based on testimony and approved by the trial court unless the record discloses prejudicial error.[5]

■ Does the evidence sustain a finding that the Pfeifer car was negligently operated? Although Edward Pfeifer's testimony that in attempting to avoid the collision he turned onto the shoulder and that his car was entirely on the east shoulder after the accident was discredited by the physical facts as established by the observation of disinterested witnesses, his testimony in other respects was substantially corroborated by his two front seat passengers, Lavern Marek and Laura Spitzack. Their testimony as a whole was to the effect that the Pfeifer car was at all times entirely within its proper lane of travel. The position of the cars after the collision, as well as the deposit of the bulk of the debris in the east lane, confirm their testimony. Already we have pointed out that the gouge mark in the pavement is not an established physical fact which conclusively demonstrates the falsity of their testimony. If a finding of negligence in the operation of the Pfeifer car is to be sustained, it must be on the theory that the driver failed to exercise reasonable care to avoid the accident after he saw, or reasonably should have seen, the Krulish car bearing down upon him in the east lane. The night was so foggy that in order to see the road it was necessary to drive with the lights on low beam. It was difficult to see any distance. Edward Pfeifer first saw the Krulish car when it was about 100 or 150 feet away. Lavern Marek first saw the Krulish car headlights at a distance of about 75 feet and said that a couple of seconds elapsed before the crash occurred. Laura Spitzack said only a couple of seconds elapsed between the time she first saw the car and the moment of the collision. The Pfeifer car was going 25 miles an hour. Whether the Krulish car was traveling 25 miles or 50 miles an hour was, upon the conflicting testimony, a question of fact for the jury. Neither car moved appreciably from the place of impact, which tends to show that both vehicles were then traveling at about the same speed. It follows that the jury could reasonably

[5]Matteson v. Blaisdell, 148 Minn. 352, 182 N. W. 442.

resolve the conflict in evidence by finding that each car was traveling about 25 miles per hour and that Pfeifer first saw the Krulish car at a distance of about 150 feet. Under these circumstances we cannot say that the jury could not find that Pfeifer, when confronted with the emergency, did not have time and ought not, in the exercise of reasonable care, to have turned his car out upon the eight-foot shoulder to his right or at least far enough to the right to avoid the collision. We cannot say that as a matter of law the driver of the Pfeifer car ever had a right to assume, under the existing conditions of fog and low visibility, that the Krulish car would return to its proper lane. Defendant Krulish said he first saw the Pfeifer car at a distance of about 50 feet. A driver of an automobile on his own side of the road must exercise due care to avoid collisions with other vehicles, even with those on his side of the road, and, while he may assume that an approaching vehicle on his side of the road will return to its proper lane, he will not be permitted to act on that assumption where the factual basis for it has disappeared, as, for example, where the vision of the driver in the wrong lane is so impaired by heavy fog that, in the light of the short distance between the two opposing vehicles, it would be unreasonable to rely upon such driver's ability to discover his error and the consequent danger in time to return to his proper lane of travel. See, Kapla v. Lehti, 225 Minn. 325, 334, 30 N. W. (2d) 685, 691; 35 Minn. L. Rev. 357, 366, 367.

Upon direct examination, Dr. H. J. Kurtin, the physician who after the collision treated the driver of the Krulish car for his injuries, testified that he found no evidence of intoxication. Upon cross-examination he further said that he could not recall having smelled liquor on the breath of any of the injured parties. Counsel then asked Dr. Kurtin upon a hypothetical question if he had an opinion as to whether he could have smelled liquor on Krulish's breath assuming that the latter had had a bottle of beer and two light drinks. An objection to this question was sustained. Aside from the fact that the hypothetical question was indefinite as to the quantity of liquor consumed and as to the time of consumption

and was not in strict conformity with the evidence, no prejudicial error could have resulted from the court's ruling in any event. After Dr. Kurtin had testified that he had not smelled liquor on Krulish's breath and had found no evidence of intoxication, it was irrelevant and immaterial, as far as the two Pfeifer defendants were concerned, whether Dr. Kurtin did or didn't have an opinion with respect thereto.

The orders of the trial court are affirmed as to all defendants.
Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

