GERALD PRICE, A MINOR, BY KENNETH PRICE, HIS
FATHER AND NATURAL GUARDIAN, v. JAMES MACKNER,
A MINOR, BY JOHN MACKNER, HIS FATHER AND
NATURAL GUARDIAN.[1]

April 10, 1953.

No. 35,877.

*Carroll & Thorson* and *Ray C. Lewis,* for appellant.
*Freeman, Larson & Peterson* and *Robert L. Hoppe,* for respondent.

MATSON, JUSTICE.

This case arises out of a head-on collision between two automobiles which occurred about 12:30 a. m. on Sunday, June 18, 1950,

---

[1]Reported in 58 N. W. (2d) 260.

about two miles northeast of Detroit Lakes, Minnesota, on Minnesota trunk highway No. 34, which runs east and west at the point of the collision. Gerald Price, a minor, who brings this action by his father and natural guardian, was driving west toward Detroit Lakes while defendant James Mackner, also a minor, was driving east. The case was tried to a jury, which returned a verdict for defendant on his counterclaim. Plaintiff appeals from the order of the district court denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Plaintiff was 19 years of age at the time of the accident. About 7:30 p. m. on Saturday, June 17, 1950, he met two friends, James J. Leitheiser and Dean O. Stilke, in a pool hall in Detroit Lakes. They played pool for a time and about 9 or 9:30 decided to drive to the Erie Club, a night club on highway No. 34 about three miles northeast of Detroit Lakes. Plaintiff testified that before leaving for the Erie Club the boys drank a bottle or two of Stite beer which they had in his car. They arrived at the Erie Club without incident and had another bottle of beer before going into the club. While at the club the boys danced and talked with friends they had met there. About 12:30 a. m. they left the club and proceeded to drive west toward Detroit Lakes. Plaintiff was driving, Leitheiser was in the front seat with him, and Stilke was riding in the rear seat.

Defendant James Mackner was also 19 years of age when this accident happened. He spent the early part of the evening of June 17, 1950, at a garage in Detroit Lakes trying to negotiate a trade of his automobile for another. He left the garage about 9 or 9:30 p. m. with Wallace I. Swedberg as a passenger. They drove out of Detroit Lakes toward Frazee to visit a friend who lived on a farm but who was not at home when they arrived. They then drove on to Frazee, where they spent about 15 minutes in The Diner. After leaving The Diner at Frazee, they drove to Shoreham and stopped at a place called the Anchorage. While at the Anchorage, they had a bottle of 3.2 beer. They spent some time in and around the Anchorage talking to friends and about 12:20 a. m. decided to drive out to the Erie Club.

Minnesota trunk highway No. 34 is a tarvia-surfaced road 26 feet wide from shoulder to shoulder, and the center of the highway is marked with an intermittent white line. Immediately west of the Erie Club the road takes what was described as a medium curve to the southwest or to plaintiff's left as he drove west. This curve ends at the crest of a hill. According to the measurements of the sheriff, the accident occurred 822 feet west of the crest of the hill. This measurement was made by standing at the scene of the accident and observing the point to the east where the lights of an oncoming car first came into view. A similar measurement showed that the lights of an automobile approaching the accident scene from the west were visible 1,572 feet from that point. The accident occurred approximately half a mile from the Erie Club.

Both plaintiff and his passenger, Leitheiser, were rendered unconscious by the collision and were not able to testify with any degree of clarity regarding the circumstances of the accident. Plaintiff was only able to recall turning onto the highway and driving toward Detroit Lakes. He thought that he was not driving over 40 miles an hour and that at his last recollection he was on the right side of the road. Leitheiser recalled traveling a couple hundred yards down the road toward Detroit Lakes, during which time, according to his testimony, plaintiff's car was on the right-hand side of the road. As to anything that occurred after the time the car got 200 yards down the road and prior to the time of the accident, his mind was a blank.

Dean Stilke was riding in the middle of the rear seat of plaintiff's car. He testified that plaintiff's car was on the right-hand (north) side of the road and was traveling in a straight line. He said that he remembered suddenly seeing lights in front of the car and that he called to plaintiff to pull over. Only a very short space of time elapsed between his seeing the lights and the collision. Upon cross-examination, Stilke testified that he could not say whether the Price car was on the right-hand side of the road between the time he saw the lights and the collision.

Defendant testified that he was driving on his right-hand (south) side of the road, that he had been meeting a succession of cars coming from the opposite direction, and that approximately 100 feet in front of him he noticed a car on his side of the road "angling slightly toward my shoulder and I stepped on my brakes and froze at the wheel." He testified that he saw the oncoming car make a slight turn to the right about 15 feet from him and then the collision occurred. Defendant's passenger, Swedberg, who was riding in the front seat with him, testified that at the time of the accident he had turned his attention to tuning the car radio as it had just faded out. He said that for about a quarter of a mile before reaching the scene of the accident they were meeting oncoming cars about every two car lengths and that just before he looked at the radio defendant was driving on his right-hand side of the road. He said also that just before the accident he heard defendant yell " 'Look out' or 'Look' or something like that."

The jury returned a verdict for defendant on his counterclaim, and plaintiff concedes that the testimony of defendant, taken alone, would be sufficient evidence to support the verdict. He contends, however, that certain uncontested physical facts are established in this case which demonstrate that the accident could not have happened as claimed by defendant.

It is quite clear from the exhibits that this was a full head-on collision, or nearly so, and that, as stated by plaintiff, the verdict must rest upon a finding that plaintiff was traveling on the south side of highway No. 34 at the time of the collision. The evidence of physical facts which plaintiff relies on to show that the accident occurred on the north side of the highway are: (1) Testimony of highway patrolman Archie Northup that he observed the debris and droppings from the collision on the north side of the highway and (2) plaintiff's exhibits 1, 2, and 3 which show the position and condition of the cars after the accident.

Plaintiff's exhibit 1 is a photograph taken with the camera facing west along highway No. 34. Plaintiff's automobile is in the foreground, sitting at an angle facing northeast and almost entirely

on the north side of the highway. Defendant's car is behind plaintiff's and is partly obscured by it. It appears to be facing in a northwesterly direction, and both rear wheels appear to be on the south side of the highway. Plaintiff's exhibits 2 and 3 make it clear that the collision was almost completely head on, but they certainly are not conclusive, or even particularly illuminating, as to the side of the highway on which the accident occurred.

Patrolman Archie Northup was called to the scene of the accident. He testified that he observed droppings from the automobiles on the north side of the highway. He could identify the droppings because they were smooth on the side that had been clinging to the cars. He further testified that the breakage from the accident was on the north side of the pavement. On cross-examination, Northup testified that defendant's automobile caught fire after the collision and that quite a little sand had been shoveled on its front end in an effort to put out the fire.

Plaintiff correctly states the rule that the question whether there is a reasonable basis for the verdict of a jury must be decided upon a consideration of all the evidence in the light most favorable to the verdict. Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448; Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404. It is also true that this court will not sustain a verdict where the evidence is so overwhelmingly against the verdict that the testimony supporting it is not worthy of belief (Brulla v. Cassady, *supra*), or where established physical facts require a conclusion contrary to the verdict. Bauer v. Miller Motor Co. 197 Minn. 352, 267 N. W. 206; see, Romann v. Bender, 190 Minn. 419, 252 N. W. 80, citing Larsen v. N. P. Ry. Co. 175 Minn. 1, 220 N. W. 159, and other cases.

Plaintiff contends that the photograph showing the position of the automobiles following the accident and the testimony of patrolman Northup bring this case within the rules set out above. We cannot agree. The picture was far from being conclusive evidence that the accident occurred on the north side of the highway. In fact it is quite possible that it was of some aid to the jury in determining that the accident occurred on the south side.

In Romann v. Bender, 190 Minn. 419, 424, 252 N. W. 80, 82, this court said:

"* * * What will happen when two cars meet head-on or at an angle, one or both going from 30 to 40 miles per hour just before meeting, is beyond safe prediction; and especially it is so when their drivers are consciously or involuntarily seeking to direct their movements. Surprising results sometimes follow, and after a collision the markings on the cars and on the road and the location of the cars are not sure proof of just how the accident happened, though they may be helpful to the jury. * * * The most that can be said for the physical facts is that they were of aid to the jury in reaching a result favorable to the plaintiff or favorable to the defendant but not conclusive of how the accident happened. The law attaches to them no certain conclusion, and none of them were of a character demonstrating that the plaintiff had no cause of action."

Certainly this court cannot determine that as a matter of law the collision occurred on the north side of the highway from an examination of plaintiff's photographs.

The testimony that the debris and droppings were on the north side of the highway, either considered alone or in conjunction with plaintiff's exhibits 1, 2, and 3, is not so conclusive or overwhelming that the evidence supporting the verdict must be disregarded. The testimony about the debris must be considered along with the evidence that dirt was shoveled onto the north side of the highway to put out the fire in defendant's automobile. In Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448, the court set out the testimony of four witnesses that the debris was all on the east side of the highway except for one hubcap. The court then said (225 Minn. 45, 29 N. W. [2d] 45):

"* * * These foregoing physical facts would not necessarily be controlling were it not for the additional physical evidence of distinct skidmarks."

In addition, in the Cofran case, there was testimony from three disinterested witnesses that the defendant's car had stayed in the proper lane. In Katlaba v. Pfeifer, 238 Minn. 298, 302, 56 N. W. (2d) 725, 728, this court said:

"* * * Physical facts, in all their essential parts, if not admitted, must be conclusively proved to the point of demonstration before they negate the declarations of witnesses so as to leave a verdict based on their testimony without foundation."

While we consider that the evidence set out above in support of the verdict was a reasonable basis for the verdict in the face of plaintiff's contentions, it should also be pointed out that certain other evidence was offered tending to support the verdict. There was the testimony of Loraine Homcik that she was a passenger in another car which passed plaintiff's car near the Erie Club and that she observed plaintiff's car zigzagging down the road. There was also the testimony of Arthur J. Waldron, a deputy sheriff who was on duty that evening in the Erie Club, that between 11 and 11:30 p. m. he saw plaintiff leaning out of his car vomiting.

Under the circumstances as above set out, it is our opinion that the question whether this accident occurred on the north or south side of the road was for the jury to determine upon a consideration of all the evidence, including plaintiff's exhibits 1, 2, and 3 and the testimony about the location of the debris. The jury having evidently decided that the accident occurred on the south side of the highway and there being sufficient evidence to support that verdict, this court has no alternative except to affirm.

Affirmed.

MR. JUSTICE ROGER L. DELL took no part in the consideration or decision of this case.