HARRY L. McMILLEN v. CARLUS G. MEYER
AND ANOTHER.
M. FERN McMILLEN v. SAME.[1]

January 13, 1956.

Nos. 36,607, 36,610.

---

[1]Reported in 74 N. W. (2d) 393.

*C. Stanley McMahon* and *George, Brehmer & McMahon,* for appellant Harry L. McMillen and respondent M. Fern McMillen.

*Harry H. Peterson* and *Hale, Skemp, Nietsch, Hanson & Schnurrer,* for respondents-appellants Carlus G. Meyer and another.

MATSON, JUSTICE.

In two actions for damages growing out of the same automobile collision, which actions were consolidated for trial and for appellate review, we have an appeal in one action by defendants from an order

granting plaintiff-passenger's motion for a new trial, and in the other action plaintiff-driver appeals from an order denying his motion for a new trial.

Defendant Carlus G. Meyer, on April 6, 1954, was driving his truck on Highway No. 61 in a southerly direction en route from St. Paul to Prairie du Chien, Wisconsin. He was accompanied by defendant James Anthony Fernette. They stopped at Red Wing where Meyer earlier in the day had bought a secondhand Hudson automobile. After leaving Red Wing Fernette drove the Hudson car a short distance behind the truck which was operated by Meyer. On the same day plaintiff Harry L. McMillen, accompanied by his wife, plaintiff M. Fern McMillen, was driving his Dodge automobile in the opposite direction in proceeding from LaCrosse to Winona. Near Lamoille, Minnesota, at about 6:30 p. m., the McMillen car, immediately after passing defendant Meyer's truck, collided with the Hudson car operated by Fernette. The accident occurred at a point which was on a slight upgrade extending upward in a northerly direction on the highway. Northward beyond this incline the highway curves slightly to the west. The highway curve on its outside perimeter is flanked with a row of guardrail posts. Defendant Fernette had been driving three or four car lengths behind the truck. When plaintiff McMillen's car came in contact with the Hudson car driven by Fernette, plaintiff's machine went out of control, proceeded along the shoulder on his side of the highway, knocked down six of the guardrail posts, and ultimately came to rest upside down on the same shoulder. Damage to the McMillen car was quite severe, whereas defendant Meyer's car was dented along the left side only, a chrome strip having been torn away by the impact.

The jury was given two forms of verdict in the action brought by M. Fern McMillen, one for the plaintiff and one for the defendant. In the action brought by Harry L. McMillen, the jury was given three forms, one for the plaintiff, one for the defendant without damages, and one for the defendant with damages (to provide for damages if found on defendant Meyer's counterclaim for the dam-

ages occasioned to his automobile). In each action the verdict was for the defendants without damages.

In the M. Fern McMillen case defendants appeal from an order granting plaintiff a new trial. In the other action plaintiff Harry L. McMillen appeals from an order denying his motion for a new trial. We have issues as to the appealability of the first order and as to whether the trial court erred in the other action in denying a motion for a new trial made on the ground of an alleged perversity between the two verdicts and on the further ground that the verdict is not sustained by the evidence.

 Plaintiff M. Fern McMillen asks that defendants' appeal in her action be dismissed for the reason that it is taken from a non-appealable order. The order expressly states that the new trial is granted *upon the ground that the verdict is not justified by the evidence and is contrary to law.* Attached to the order is the trial court's memorandum, which was not made a part of the order but which states that the verdict is not strictly perverse although it has the characteristics of a perverse verdict when compared to the verdict in her husband's case. The memorandum explicitly recognizes that a motion for a new trial, of the type involved herein, is addressed in a large measure to the court's *discretion.* In the memorandum the trial judge further states that in his opinion there was good reason to believe that the jury did not understand the instructions. Obviously the order is not appealable under M. S. A. 605.09(4) which permits an appeal—

"* * * from an order granting a new trial *if the court expressly states therein, or in a memorandum attached thereto,* that the order is *based exclusively upon errors of law occurring at the trial, and upon no other ground;* and the court shall specify such errors in its order or memorandum, * * *." (Italics supplied.)

The explicit language of the trial court in its order is unequivocal and establishes clearly, beyond any possible misunderstanding, that the new trial *was not granted exclusively for errors of law occurring at the trial and that it was in fact granted at least in part on the ground that the verdict is not justified by the evidence.* The memo-

randum, which was not made a part of the order, is of little significance since it is elementary that a trial court's memorandum may not be used to impeach, contradict, or overcome express findings or an order granting or denying a motion for a new trial where such memorandum is not made a part of the findings or order which form the basis for review on appeal.[2] While a memorandum not expressly made a part of the order may be referred to for the purpose of throwing light upon or explaining a decision, such memorandum may not be referred to for the purpose of impeaching, contradicting, overturning, or modifying the positive and unambiguous terms of the order. The general rule is that a memorandum of a trial judge is no part of the order or findings to which it is attached, unless expressly made a part thereof; and, whether attached or not, it may be referred to only for clarification where the trial court's order or finding is not explicit in itself and is ambiguous.[3]

It is true that pursuant to § 605.09 (4) an appeal may be taken from an order granting a new trial if the court states, *either in the order itself or in a memorandum attached thereto,* that the order is *based exclusively upon errors of law occurring at the trial,* but this statutory provision in the alternative does not permit the attached memorandum (which has not been made a part of the order) to be used to impeach, contradict, or modify the terms of the order when the trial court has explicitly and clearly stated in such order itself the grounds upon which it is based. Here the trial court's order needs no clarification.

We do observe, however, that the memorandum herein, when it is construed as a whole, unmistakably shows that the granting of the new trial primarily involved an exercise of judicial discretion. In the recent case of Von Bank v. Mayer, 239 Minn. 492, 59 N. W. (2d) 307, we again emphasized that an order granting a new trial is not appealable where the granting involves the exercise of any element of judicial discretion and is therefore not based *exclusively* upon errors of law occurring at the trial. Weatherhead v. Burau, 237

[2]Kleidon v. Glascock, 215 Minn. 417, 10 N. W. (2d) 394.

[3]Ross v. Duluth, M. & I. R. Ry. Co. 207 Minn. 157, 290 N. W. 566.

Minn. 325, 327, 54 N. W. (2d) 570, 571, is of no help to defendants since it was lucidly stated therein:

"* * * The language used here, while not the exact language of the statute, *clearly shows that the new trial was granted exclusively upon errors of law occurring at the trial* and effectively eliminates any grounds that might involve the exercise of judicial discretion; hence, it sufficiently complies with the statute and is appealable." (Italics supplied.)

Defendants' appeal in the M. Fern McMillen case must be and is hereby dismissed as having been taken from a nonappealable order.

■■■■ Plaintiff-husband asserts that the trial court abused its discretion in denying his motion for a new trial since a similar motion was granted in his wife's case on the alleged ground that the jury did not understand the instructions and for the further reason that the two verdicts are perverse. The memorandum which accompanied the order of denial, but which was not made a part thereof, may be referred to for the limited purpose of clarification since the order itself did not specify upon what grounds the denial was made. In the memorandum the trial court, after first making certain observations about defendants' testimony, stated:

"2.

"The verdict was not actually perverse. If both drivers were negligent, neither was entitled to recover. The verdict in Mrs. McMillen's case would seem to indicate that the jury did not find defendants' driver negligent, but there is grave doubt that the jury understood the instructions. The one thing that seems clear, however, from the jurors' questions to the Court and the fact that the verdict came in without further deliberation, is that the jury found the plaintiff negligent. Such being the case, their failure to award damages upon the counterclaim was not prejudicial to him; and their failure to understand the instructions did not affect the verdict upon his claim."

Prior to their verdicts the jurors returned to the courtroom for further instructions. At least five of the questions asked by the jurors

strongly indicated that they had already concluded that plaintiff-husband was contributorily negligent.[4]

We cannot say that upon the issue of plaintiff's contributory negligence the two verdicts are contradictory. Whatever perversity exists relates wholly to defendants' negligence.[5] The verdict for the defendants in plaintiff-wife's case indicated of course that defendants were not negligent and such conclusion is not inconsistent with a finding in the other case that plaintiff-husband was contributorily negligent. In contrast the verdict for the defendants in plaintiff-husband's case, *without damages for defendant Meyer on his counterclaim,* indicated two conclusions: First, that plaintiff-husband was contributorily negligent since he was not awarded the verdict despite the fact that defendant Meyer was awarded no damages on his counterclaim; second, that, since no damages were awarded on defendant Meyer's counterclaim, defendants were negligent. In essence we have an absolute finding that plaintiff-husband was contributorily negligent and with respect to this finding there is no inconsistency between the two verdicts.

The two verdicts are contradictory only on the issue of defendants' negligence. In the husband's case, the verdict bespeaks defendants'

[4]Upon the return to the courtroom the jurors repeatedly prefaced their questions with the phrase *if we find the plaintiff negligent* (referring to Harry L. McMillen) in inquiring whether they would be permitted to award damages to Mrs. McMillen, whether she would then also be responsible for damages, and whether damages might be awarded to defendant Meyer. The whole tenor of the questions revealed the jurors were having a mental struggle in determining the rights and liabilities of Mrs. McMillen after first assuming that her husband was contributorily negligent.

[5]For examples of truly perverse verdicts, see Ayer v. Chicago, M. St. P. & P. R. Co. 187 Minn. 169, 244 N. W. 681; Tiedje v. Haney, 184 Minn. 569, 239 N. W. 611; Begin v. Liederbach Bus Co. Inc. 167 Minn. 84, 208 N. W. 546. In each of these cases suit was brought against a corporation and also against its employer-agent upon whose negligent acts was predicated the asserted liability of the corporation. In each case the jury came back with a verdict against the corporation but not against the individual defendant. New trials were granted in each case simply on the ground that the verdicts were logically inconsistent in that, if A's liability is derived solely through B's negligence, A cannot be liable if B is found not to be negligent.

negligence; the verdict in the wife's case, however, bespeaks defendants were not negligent. In the wife's case the trial court was of the opinion that the jurors' conclusions were not sustained by the evidence and that such conclusions may have stemmed from a misunderstanding of the instruction. He cured what he conceived to be an erroneous conclusion in the wife's case—as well as any inconsistency between the two verdicts on the issue of defendants' negligence— by exercising his judicial discretion in granting her motion for a new trial. We cannot say that he thereby abused his discretion. As pointed out in the trial judge's memorandum in the husband's case, the plaintiff therein,. *assuming that the evidence sustains a finding that he was contributorily negligent,* was not affected or prejudiced by any failure to award damages upon defendant's counterclaim. It follows he was likewise not prejudiced in any inconsistency between the verdicts on the sole issue of defendants' negligence.

We turn to the issue of whether the evidence sustains a finding that plaintiff-husband was contributorily negligent. Taking as we must the evidence in the light most favorable to the verdict, we have these facts: First of all we have the unique circumstance that the debris deposited on the highway could come only from plaintiffs' car since the Hudson had been steam-cleaned prior to its sale and delivery to defendant Meyer. The deputy sheriff, Helmer Weinmann, testified that approximately two-thirds of the debris was deposited in plaintiff's driving lane and about one-third in defendants' lane. Fernette also indicated that debris was on both sides of the center line with most of it in plaintiffs' lane. Fernette declared that, although he was not sure on which side the accident happened, he did know he kept on his side of the center line. Fernette's testimony was contradicted by the sheriff, George L. Fort, who said that Fernette had told him at the scene of the accident that he had "turned out in the other lane of traffic * * * to look ahead." Mr. McMillen said that just as he passed the truck he saw the Hudson car (which he estimated to be about one and one-half to two car lengths behind the truck) angle across the center line and come right

toward him. Mrs. McMillen said the Hudson was coming toward them at an angle and that about one-third of the front width of the Hudson was across the center line. This testimony by plaintiffs, which would indicate that the front end of the Hudson projected itself into the opposite lane of travel and struck plaintiffs' car, is not in accord with the physical fact that the Hudson was not dented or damaged in front but only along its entire left side which Fernette described as having resulted from a "side-swipe." Although the physical facts herein are not controlling in the sense of conclusively negating opposing testimony, they do furnish a basis for a reasonable inference by the jury as to the point of impact and as to the manner and degree in which the cars collided with each other.[6] It was for the jury to resolve the conflicts in the testimony as between the different witnesses and also as between that testimony and the inconclusive, though informative, physical facts.

The jury could also have concluded that plaintiff Harry L. McMillen was traveling at excessive speed since his car did not come to rest until it had traveled 201 feet from the point of impact, and then only after having first plowed a furrow in the shoulder of the highway for 139 feet and after having broken off at ground level six guardrail posts. Plaintiffs' testimony that the McMillen car was traveling 45 miles per hour is also contradicted by the testimony of defendant Meyer in which he estimated plaintiffs' car to be traveling approximately 70 miles per hour. Meyer also declared that plaintiffs' car swerved and seemed slightly out of control as it passed his truck. We have not overlooked that defendant Meyer's testimony was to a limited extent impeached by Sheriff Fort and Deputy Sheriff Weinmann, who both denied Meyer's statement that he had told them at the scene of the accident that the McMillen car was traveling at a high rate of speed and out of control. In the light of the evidence as

---

[6]See, Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448; Katlaba v. Pfeifer, 238 Minn. 298, 56 N. W. (2d) 725; Bauer v. Miller Motor Co. 197 Minn. 352, 267 N. W. 206; Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134; Lamp v. Pennsylvania R. Co. 305 Pa. 520, 158 A. 269, 84 A. L. R. 1217; 14 Dunnell, Dig. (3 ed.) § 7160a, and cases there cited.

a whole, we must conclude that the jury's verdict on the issue of contributory negligence is sustained.

We hold therefore that, where two plaintiffs have brought separate actions for damages growing out of the same automobile collision, and said actions have been consolidated for jury trial, it was not, under the circumstances herein existing, an abuse of discretion for the trial judge to deny one of the plaintiffs a new trial, despite the fact that the two verdicts were contradictory on the issue of defendants' negligence, when the verdicts were in fact consistent on the issue of such plaintiff's contributory negligence and the evidence sustained a finding of such contributory negligence.

The order of the trial court in the Harry L. McMillen action is affirmed, and the appeal in the M. Fern McMillen action is dismissed.

